Filed 3/28/13  Karen D. v. Super. Ct. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KAREN D., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF CONTRA COSTA COUNTY, <br><br> Respondent; <br> _____ <br><br> CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, <br><br> Real Parties in Interest. | A137720 <br><br> (Contra Costa County <br> Super. Ct. No. J11-01380) |

By petition seeking an extraordinary writ (Cal. Rules of Court, rule 8.452), Karen D. (mother)[1] asks us to vacate the juvenile court's order terminating reunification services and setting a selection and implementation hearing pursuant to Welfare and Institutions Code[2] section 366.26 for her 21-month old son, Timothy.  Mother contends the juvenile court erred in denying her request for a contested hearing before setting the section 366.26 hearing, by terminating her reunification services without evidentiary support, and by failing to take into consideration her medical issues, which she contends warranted an extension of reunification services.  We deny the petition.

---

[1]     Father, Timothy N., is not a party to this petition.

[2]     Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2011, the Contra Costa County Bureau of Children and Family Services (Bureau) filed a petition pursuant to section 300, subdivision (b), alleging, among other things, that Timothy, then five months of age, had been exposed to violent conduct between his parents. It was also alleged that mother suffered from depression and bipolar disorder, which were not consistently treated and which impaired her ability to care for and supervise Timothy. Additionally, it was alleged that mother suffered from a substance abuse problem, which rendered her incapable of providing regular care and supervision of Timothy.[3] It was further alleged that mother allowed father to care for Timothy unsupervised despite her knowledge that father suffered from a substance abuse problem and an anger control problem that impaired his ability to care for and supervise the child. The petition stated that father was arrested on October 5, 2011, after threatening to kill the social worker, a police officer, mother, and maternal grandmother. Timothy was ordered detained in an out-of-home foster care placement.

The petition was amended and following a contested jurisdictional hearing on February 24, 2012, four counts were sustained under section 300, subdivision (b). According to the dispositional report—which recommended a bypass of reunification services—Timothy, along with his siblings, had been placed with his maternal grandmother and maternal aunt. The dispositional report recommended that a section 366.26 hearing be set so that Timothy could be adopted by his maternal grandmother and maternal aunt. The Bureau reiterated its concerns that mother "was not getting treatment for her mental illness, used methamphetamine when not in treatment, is difficult to deal with and has a history of 5150's and other abusive behaviors." A dispositional hearing was set for April 11, 2012.

---

[3] The section 300 petition also alleged that mother had been unable to care for Timothy's two sisters (then 11 and 7 years old); since 2004, Timothy's sisters have resided with the maternal grandmother. Timothy's siblings are not part of the instant proceeding.

Following two continuances, a contested dispositional hearing was held on July 2, 2012. At the hearing, counsel for the Bureau represented that, in light of the parents' efforts to make "some minimal progress," the Bureau was willing to offer services to mother and father. On July 9, the court entered a dispositional order continuing Timothy in out-of-home custody with his maternal relatives and setting a six-month status review hearing for December 12, 2012.

In the report prepared for the six-month status review hearing, dated December 12, 2012, the Bureau recommended that mother be provided with additional reunification services. The report noted that mother was recovering from surgeries after having a large cyst removed from her chest and another cyst removed from under her ear. Also during this reporting period, mother had "stepped up and stayed in contact with [the] social worker [on a] weekly [basis]." It was further noted that mother was making "sincere strides" in working toward "completion of the family reunification case plan." However, due to medical complications stemming from her surgeries, mother had delayed her entry into the Jelani House substance abuse program. According to the status review report, mother had been regularly and consistently visiting with Timothy, and the visits had gone well, with the mother being appropriate throughout all the visits. Mother appeared to be clean and sober. Attached to the status review report were three letters describing mother's efforts to comply with her case plan.

At the December 12, 2012 hearing, counsel for the Bureau remarked that the case had been "stretched out considerably," noting that the initial removal was in October 2011, yet the disposition did not occur until July 2012. Counsel further noted that although they were there for a six-month review, the case was actually past the 12-month mark and that the 18-month period would expire on April 5, 2013. Counsel acknowledged that the parents were complying with their case plan, but advised the court that if the parents were not able to have the child returned to them at the end of the 18-month period, the Bureau would be required to set the matter for a section 366.26 hearing. Timothy's counsel requested a combined, contested 6-month and 12-month hearing, which was set for January 18, 2013.

3

At the January 18, 2013 review hearing, counsel for the Bureau reported that, in light of the medical delay caused by mother's surgeries, the Bureau wanted to extend services for another two months "to at least go to the 18-month review." Counsel explained that although mother's medical issues had "been resolved substantially," the delay caused by these issues had prevented mother from entering a treatment facility. As to father, counsel reported that he had been involved in parenting classes, group counseling, and had been compliant with drug testing (all tests being negative). Counsel for the Bureau further explained that Timothy, along with his siblings, continued to be in the good care of his maternal relatives. Accordingly, counsel for the Bureau opined that "no prejudice would result in continuing this case at least until March." With that, counsel for the Bureau submitted the matter.

Father's counsel reported that he was "impressed" that his client "has maintained his sobriety." Counsel further noted that father "is quite different from the man" he initially met and he was "pleased with his progress." Counsel explained that father was no longer eligible for services at Jelani House because he did not "fit the criteria of a substance abuser." As such, Jelani House had assisted father in transitioning to Rose House. Counsel asked the court to "find that there is significant basis" to extend services, and to further find that the child will likely be reunified with his parents.

Similarly, mother's counsel reported that mother had "made a tremendous amount of progress." Counsel explained that the delay in getting to disposition was caused by the Bureau's initial refusal to offer mother services, which she contested, and subsequently obtained. Counsel reported that mother has "made a marked improvement," explaining that "although . . . there was some substance abuse issue[s], . . . the real issue here was mother's mental health, and that since mother had been on her medication she had remained in constant contact" with the Bureau. Accordingly, mother's counsel asked the court to "follow the recommendations and go out to the 18-month review and come back in two months."

Timothy's counsel stated that he was in agreement with the recommendation that parents receive additional services until the 18-month review. The court then asked if anyone had "[a]nything further" to add.

Upon all of the parties submitting the matter on the recommendations, the court stated that it could not find a substantial probability that Timothy could be returned to either parent. In so ruling, the court explained that father did not visit the child for six months and there was no substantial probability that the child could be returned to him in two months, given father's violent tendencies, which he only recently, in the last month, attempted to correct. With respect to mother, the court stated, "As much as and as hard as she tried, I do not find a substantial probability that the child could be returned to her alone to take care of the child."

Upon hearing the court's decision to terminate reunification services and set a section 366.26 hearing, mother's counsel objected. The court, responded, "[t]oo late," advising counsel that "[a]ny objections you would have had . . . should have been done before the court considered, read the file and made the orders." Mother's counsel explained they "were here for [a] contested hearing based on the minor's attorney objecting to the recommendation other parties had previously submitted." Mother's counsel was "not aware that [minor's counsel] was submitting, as well, until just a moment ago, and did not know that the court was not inclined to follow the recommendations." Counsel further stated that the Bureau was not objecting to extending the case to the 18-month review. In light of the court's ruling, mother's counsel said that she needed to examine the social worker who prepared the report. Father's counsel similarly objected to making the orders without the testimony of the social worker. The court overruled the objections, noting that the social worker was present in court and that the parties, if they had any questions, should have sought to elicit testimony from her instead of submitting the matter.

Citing *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774 (*Elizabeth R.*), mother's counsel argued that given the status of mother's mental and physical health, she was entitled to the full 18 months of services. Overruling the objection, the court explained

5

that although it did consider *Elizabeth R.,* it nevertheless did not "feel the child would be safe in mother's care if she had six more months of reunification, let alone two–at least, not alone."

Seeking to "make the record clear," Timothy's counsel told the court that he agreed with its ruling. Counsel stated that the "court couldn't find the child[] would be returned in 18 months." Counsel added that he "was just offering that as a possible compromise."

At the conclusion of the hearing, the court terminated mother's and father's reunification services and set the matter for a section 366.26 hearing. Mother's writ petition followed. (§ 366.26, subd. (*l*)(1).)

## II. DISCUSSION

### A. *Mother's Due Process Rights Were Not Violated*

"Parents have a fundamental liberty interest in the care, custody, and management of their children. (*Santosky v. Kramer* (1982) 455 U.S. 745, 753.) The state and federal Constitutions guarantee no state shall deprive parents of this interest in their children without due process of law, which includes the right to confront and cross-examine witnesses in dependency proceedings. [Citations.]" (*David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 777 (*David B.*).) Due process requires that the court strike a balance between the state's strong interest in prompt and efficient resolution of dependency matters and a parent's fundamental liberty interest in their relationship with their child. (*Id.* at pp. 777-778.) It is axiomatic that due process requires fairness in the procedure employed. (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 756-757 (*Ingrid E.*).) Thus, it guarantees the parent the right to a meaningful hearing in which she can make her case on behalf of her parental interests. (*Ibid.*) Due process also connotes a hearing appropriate to the nature of the case. (*In re James Q.* (2000) 81 Cal.App.4th 255, 265 (*James Q.*).) What is appropriate depends on the circumstances presented. (*Ibid.*)

Here, mother contends the court denied her due process right to a contested 6-month review hearing. At the outset, we note the matter had been pending for over a

year, and the challenged hearing was actually a combined 6-month and 12-month review hearing. More importantly, the combined hearing had been set as a *contested hearing* by Timothy's counsel and mother had more than a month to prepare for it.

Section 366.21, subdivision (e), governs the proceedings at the 12-month review hearing and states in relevant part: "At the review hearing held six months after the initial dispositional hearing, . . . the court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment. . . . The failure of the parent . . . to participate regularly . . . in court-ordered treatment programs shall be prima facie evidence that return would be detrimental. In making its determination, the court shall review and consider the social worker's report and recommendations . . .; and shall consider the efforts or progress, or both, demonstrated by the parent . . . and the extent to which he or she availed . . . herself to services provided . . . ."

In addition, the court may extend court-ordered services not to exceed 18 months if it finds that there is a substantial probability that the minor will be returned to the physical custody of his parent within six months. (§ 361.5, subd. (a)(3).)

Thus the contested issues before the juvenile court were whether return of Timothy to mother posed a substantial risk of detriment to Timothy and whether there was a substantial probability that he would be returned to mother's physical custody within another two months. Rather than challenge the contested issues raised by Timothy's counsel, mother elected to submit the matter on the Bureau's recommendation that she receive additional services. In a somewhat surprising turn of events, Timothy's counsel indicated he had "no objection to this child and the parents being given more reunification services till the 18-month review." It was only after the matter was submitted and the juvenile court announced its decision to terminate reunification

7

services and set the matter for a section 366.26 hearing, did mother seek to introduce evidence.

The facts of this case are readily distinguishable from those presented in the cases upon which mother relies. In the instant case, the juvenile court did not refuse to schedule a contested hearing without an offer of proof. (See *David B., supra,* 140 Cal.App.4th at p. 779; *James Q., supra,* 81 Cal.App.4th at pp. 259-260; *Ingrid E., supra,* 75 Cal.App.4th at p. 755.) In fact, this case presents a situation not addressed in those cases or any other decisions for that matter, to wit: whether the juvenile court denied mother's rights to a fair review hearing, when after a contested review hearing had been duly noticed and all the parties at the hearing elected to submit on the recommendation that reunification services be continued, the court terminated reunification services and set a section 366.26 hearing.

It is well established that review hearings are critical stages in the dependency process. (*James Q., supra,* 81 Cal.App.4th at p. 262.) "From the perspective of the parent, review hearings are the essential mechanisms by which he or she may be foreclosed from any further relationship with the child." (*Id.* at p. 263.) "During this time, the parent has the best opportunity he or she ever will have to make the strongest case possible in favor of returning the child to parental custody. Thus, review hearings represent one of the '[s]ignificant safeguards . . . built into the current dependency scheme.' [Citation.]" (*Ibid.*)

Here, mother elected not to put forth her strongest case for Timothy's return. Instead, she decided to submit on the Bureau's recommendation for continued services. That minor's counsel also agreed to the Bureau's recommendation for two additional months of services is of no moment, as the juvenile court was not required to follow such recommendations. Rather, "[t]he juvenile court is vested with ' "very extensive discretion in determining what will be in the best interests of a child," and that its determination will not be reversed save for clear abuse of that discretion. [Citation.]' [Citation.]" (*In re B.S.* (2012) 209 Cal.App.4th 246, 254.) Here, the juvenile court, after reviewing Bureau's report and considering, among other things, mother's efforts in

8

complying with the case plan and Timothy's placement with his maternal grandmother, terminated further reunification services and set the matter for a section 366.26 hearing. "While the juvenile court had the power to vacate its orders [citation], there is nothing in the record to indicate its refusal to do so was an abuse of discretion." (*In re A.D.* (2011) 196 Cal.App.4th 1319, 1328.)

**B.      *Substantial Evidence Supports the Termination of Reunification Services***

Mother contends the juvenile court erred in not continuing her reunification services. We disagree. Although family reunification services play a "crucial role" in dependency proceedings (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 467), such services are a benefit, not a constitutionally protected right (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1242). Where, as here, a child is under three years of age at the time he or she is initially removed from the parents' custody, the juvenile court can only extend reunification services "up to a maximum time period not to exceed 18 months after the date the child was originally removed from [the] physical custody of his or her parent . . . ." (§ 361.5, subd. (a)(3).) In order to extend reunification services, the juvenile court must find that there is a "substantial probability" that the child will be returned to parental custody and "safely maintained" in the home within the extended time or that reasonable services were not provided. (§ 366.21, subd. (g)(1); see also § 361.5, subd. (a).)

The applicable standard of review is sufficiency of the evidence (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346), which "requires us to determine whether there is reasonable, credible evidence of solid value such that a reasonable trier of fact could make the findings challenged" (*In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401). "The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to all appeals. If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm

9

the order even if other evidence supports a contrary conclusion. [Citation.] The appellant has the burden of showing the finding or order is not supported by substantial evidence." (*In re Megan S.* (2002) 104 Cal.App.4th 247, 250-251.)

In this case, April 2013 marks the maximum period of 18 months of reunification services. In order to continue reunification services until then, the juvenile court had to find that there was a substantial probability that Timothy could be placed with mother and safely maintained in her home by that time. The juvenile court stated it could not make those findings since mother, although making strides in her case plan, had not progressed to the point where she could safely care for Timothy on her own and she would not be able to do so even in six months, let alone two. We concur.

Timothy was originally detained in October 2011. Yet, more than a year later, mother had not progressed beyond monthly, supervised visits with Timothy. As of December 2012, mother had not complied with the aspect of her case plan that required her to seek inpatient treatment to resolve the issues that lead to Timothy's removal. According to the status review report, mother was willing to enter inpatient treatment but due to a "severe learning disability" is "not able to read, write, or process written material." As such, she wanted to enter treatment with father so that he could help with "reading, writing, and comprehending what they need to learn during class sessions." However, due to medical complications from her surgeries, mother and father delayed their re-entry into the Jelani House substance abuse program.

The appellate record in this case contains substantial evidence supporting the juvenile court's finding that there was not a substantial probability Timothy could be returned to mother's custody by the 18-month review hearing.

## C. *Extension of Reunification Services Was Not Justified*

We next address mother's argument that her physical and mental health problems entitled her to receive additional reunification services. In support of her argument she cites *In re Elizabeth R., supra,* 35 Cal.App.4th at page 1797. In *Elizabeth R.,* the juvenile court reluctantly terminated reunification services at the 18-month review hearing for a mentally ill mother who had an "impeccable record of visitation and efforts to comply

10

with the reunification plan" but her efforts were unsuccessful because she was hospitalized for all but five months of the reunification phase of the dependency proceedings. (*Id.* at pp. 1777-1778.) Though impressed with the mother's progress and ability to sustain her mental health, the court believed it had no choice but to terminate reunification services. (*Id.* at p. 1783.) On appeal, the case was remanded for the juvenile court to entertain a section 352[4] motion for a continuance of services beyond the statutory limitation. (*Elizabeth R., supra,* 35 Cal.App.4th at p. 1799.) The appellate court concluded section 352 provides an "emergency escape valve in those rare instances" in which the juvenile court determines the best interests of the child would be served by a continuance of a review hearing beyond the statutorily permissible time frame. (*Id.* at pp. 1798-1799.)

Mother's case is distinguishable from *Elizabeth R.* in several key respects. Unlike the juvenile court in *Elizabeth R.,* the juvenile court in this case was aware it had the discretion to continue services if it found special circumstances warranted it. The court simply did not find any evidence of special circumstances. Contrary to mother's suggestion, she was not prevented from participating in reunification services due to her mental illness. Unlike in *Elizabeth R.,* there is no evidence that mother's mental illness required that she be hospitalized during a substantial portion of the reunification phase. Rather, mother was being treated by a psychiatrist and was on medication that she reported was "helping her a lot and stabilizing her moods and mental well being." Further, while the complications from mother's surgeries undoubtedly were challenging, they are not so unusual or extraordinary as to render an abuse of discretion by the juvenile court's failure to find them sufficient to support an exception to the clear statutory deadlines.

---

[4] Section 352, subdivision (a), enables a juvenile court to continue any juvenile dependency hearing beyond the time limit within which the hearing is otherwise required to be held upon a showing of good cause and provided a continuance will not be contrary to the interest of the minor.

## III. CONCLUSION

Having concluded the juvenile court's decision not to continue mother's reunification services was proper and there were no extraordinary circumstances justifying the extension of such services, we affirm its orders terminating her reunification services and setting a section 366.26 hearing.

## IV. DISPOSITION

Mother's petition for extraordinary writ is denied.  Similarly, mother's request for a stay of the proceedings is denied.  This decision shall be final immediately.

_____
REARDON, ACTING P. J.


We concur:


_____
RIVERA, J.


_____
HUMES, J.