44 Cal.Rptr.3d 799 (2006)
140 Cal.App.4th 772
DAVID B., Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
Orange County Social Services Agency et al., Real Parties in Interest.
No. G036456.
Court of Appeal, Fourth District, Division Three.
June 20, 2006.
*800 Donna P. Chirco for Petitioner.
No appearance for Respondent.
Benjamin P. de Mayo, County Counsel, Dana J. Stits and Jeannie Su, Deputy County Counsel for Real Parties in Interest.
Linda M. O'Neil for the Minor.

OPINION
MOORE, J.
Does the parent of a dependent child have a due process right to a contested review hearing, unfettered by the prerequisite of a juvenile court's demand for an offer of proof? For reasons more fully discussed below, the answer we believe is yes. Cross-examination is not just the "Hail Mary pass" of a desperate attorney; it is a recognized method of challenging adverse witnesses, one protected by fundamental notions of due process of law and fundamental fairness. Petitioner is entitled to his day in court.

I

FACTS
David B., the petitioner, is the father of the minor child Susan M. In August 2002, Susan's mother, who had custody of Susan at the time, was arrested for being under the influence of a controlled substance. The mother was on parole due to a history of substance abuse and behavior associated with substance abuse. Orange County Social *801 Services (SSA) detained Susan, who was 14 months old at the time, placed her in a foster home, and identified David as her presumed father. Susan was declared a dependent child of the Orange County Juvenile Court in December 2002.
The facts of the case from the filing of the petition through the contested 12-month review hearing were presented in detail in David B. v. Superior Court (2004) 123 Cal.App.4th 768, 20 Cal.Rptr.3d 336. In January 2005, SSA filed a subsequent petition,[1] alleging David's substance abuse was an unresolved problem of longstanding (since David was 14 years old), listing two drug-related arrests in 2004 (possession of methamphetamines in August and possession of drug paraphernalia), and alleging David tested positive for methamphetamine.
In March 2005, the juvenile court found true the allegations of the subsequent petition, continued Susan as a dependent child, and approved a case plan with additional requirements addressing David's drug abuse. The updated case plan required David to abide by the conditions of his probation, adequately parent Susan, stay sober, obtain and maintain a stable residence, refrain from using illegal drugs and comply with drug testing requirements, comply with court orders, keep the social worker informed of pertinent changes and difficulties in completing case plan, monitor Susan's health, avoid arrests and convictions, obtain legal income, demonstrate an ability to have custody of Susan, meet Susan's needs and provide a safe home, cooperate with any psychological evaluation, if incarcerated, inquire into the availability of all services which will assist in reunification, participate in individual therapy, complete a parenting class, submit to twice weekly random drug/alcohol testing, attend twice weekly 12-step program meetings, and complete an alcohol treatment program. David was to participate in monitored visitation, once a week if he was not incarcerated and once a month if he was incarcerated.
On April 4, 2005, David was sentenced to serve a four-month jail term for a violation of probation. He was released from custody on August 4 and entered Hope House, a residential drug treatment facility. In October, David's probation officer stated David would not be able to leave Hope House for at least three or four more months, which meant he could not comply with his service plan or parent Susan for that time period. SSA recommended the court terminate reunification services and schedule a section 366.26 permanency planning hearing.
The 18-month review hearing, which had been originally scheduled for August 31, 2005, was continued to October 21. According to the reporter's transcript of proceedings on October 21, the court made a tentative ruling denying David's counsel's request to cross-examine the social worker, present David's testimony, or present any other evidence on the issues of whether David received reasonable services or the suitability of current Susan's placement.
The court stated it relied on the following three cases, In re Earl L. (2004) 121 Cal.App.4th 1050, 18 Cal.Rptr.3d 74, In re Jeanette V. (1998) 68 Cal.App.4th 811, 80 Cal.Rptr.2d 534, and Maricela C. v. Superior Court (1998) 66 Cal.App.4th 1138, 78 *802 Cal.Rptr.2d 488, to deny David a contested hearing and to request his counsel make an "an offer of proof to see if the entire line of cross-examination [was] relevant to the issue before the court...." The court continued the case to November 4 to give David's counsel an opportunity to brief the issue.
On November 4, 2005, David's counsel argued, "at an 18-month review it's my position that a parent's attorney has the right to explore the reasonable services that the parent was offered, to cross-examine the social worker who prepared the reports that are going to be admitted into evidence about statements that are contained in those reports." Counsel cited the following three cases to support her argument, In re James Q. (2000) 81 Cal. App.4th 255, 96 Cal.Rptr.2d 595, In re Matthew P. (1999) 71 Cal.App.4th 841, 84 Cal.Rptr.2d 269, and In re Heather P. (1989) 209 Cal.App.3d 886, 257 Cal.Rptr. 545. The court took the matter under submission.
On November 14, 2005, the court refused "to hear evidence offered by the father based on the offer of proof." The court also stated it had "read and re-read" In re James Q., supra, 81 Cal.App.4th 255, 96 Cal.Rptr.2d 595, but it "just didn't want to follow that particular case." However, the juvenile court stayed proceedings for three weeks to permit David's counsel to file a petition for writ of mandate.
On December 16, 2005, David filed a petition for writ of mandate and request for stay of the 18-month review hearing. On December 16, this court issued a stay and invited the parties' to submit informal letter briefs. On March 30, 2006, following the receipt of the parties' letter briefs, this court issued an order to show cause and set the matter for oral argument.

II

DISCUSSION
Parents have a fundamental liberty interest in the care, custody, and management of their children. (Santosky v. Kramer (1982) 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599) The state and federal Constitutions guarantee no state shall deprive parents of this interest in their children with out due process of law, which includes the right to confront and cross-examine witnesses in dependency proceedings. (Santosky v. Kramer (1982) 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599, In re Malinda S. (1990) 51 Cal.3d 368, 383, fn. 16, 272 Cal.Rptr. 787, 795 P.2d 1244.) "Although the state and federal Constitutions differ somewhat in determining when due process rights are triggered, once it has been concluded that a due process right exists we balance similar factors under both approaches to decide what process is due. [Citation.] This flexible balancing standard considers `"(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the [dignity] interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."' [Citation.]" (In re Malinda S., supra, 51 Cal.3d at p. 383, 272 Cal.Rptr. 787, 795 P.2d 1244, fn. omitted.)
Family preservation, which necessarily includes family reunification services, is the primary focus during the first *803 12 to 18 months of dependency proceedings. (§§ 319, subd. (b), 361.5, subd.(a); In re Elizabeth R. (1995) 35 Cal.App.4th 1774, 1787, 42 Cal.Rptr.2d 200.) "`During this time, the parent has the best opportunity he or she ever will have to make the strongest case possible in favor of returning the child to parental custody. Thus, review hearings represent one of the "[s]ignificant safeguards . . . built into the current dependency scheme." [Citation.]' [Citation.]" (Judith P. v. Superior Court (2002)102 Cal.App.4th 535, 541, fn. 3, 126 Cal.Rptr.2d 14.) "[U]p until the time the section 366.26 hearing is set, the parent's interest in reunification is given precedence over the child's need for stability and permanency." (In re Marilyn H. (1993) 5 Cal.4th 295, 310, 19 Cal.Rptr.2d 544, 851 P.2d 826.) However, "[o]nce reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability." (Id. at p. 309, 19 Cal.Rptr.2d 544, 851 P.2d 826.)
This case has progressed to the 18-month permanency review hearing. Section 366.22, subdivision (a) provides that if Susan is not returned to her father after this hearing, the juvenile court shall set a section 366.26 permanency hearing unless the court finds by clear and convincing evidence doing so is not in her best interest. This marks a critical turning point in the proceedings from a focus on family reunification to finding a permanent and stable placement for the child. David's best opportunity to make a case for regaining Susan's custody is now, not after reunification services are terminated and termination of parental rights becomes the preferred placement option. (§ 366.26, subd. (b)(1)-(4).)
Review hearings are an integral part of the constitutional safeguards provided to the parent and child in California's dependency scheme. (In re Marilyn H., supra, 5 Cal.4th at pp. 307-308, 19 Cal.Rptr.2d 544, 851 P.2d 826; Ingrid E. v. Superior Court (1999) 75 Cal.App.4th 751, 759, 89 Cal.Rptr.2d 407.) The importance of the right to a contested review hearing was recognized in In re James Q., supra, 81 Cal.App.4th 255, 96 Cal.Rptr.2d 595. In that case, a mother requested a contested six-month review hearing on the related issues of reunification services and visitation. The juvenile court found the mother failed to make a sufficient offer of proof and terminated reunification services. The appellate court reversed the judgment. "As a matter of statutory construction and constitutional due process, we conclude the juvenile court cannot require a party to a review hearing to tender an offer of proof as a condition to obtaining a contested hearing. [Citations.] A party must be able to make its best case, untrammeled by evidentiary obstacles arbitrarily imposed by the court without legislative sanction. [Citation.]" (In re James Q., supra, 81 Cal.App.4th at p. 266, 96 Cal.Rptr.2d 595, italics added.) We agree with this conclusion.
At review hearings, the agency bears the burden of proof. It would be anomalous indeed to require the opponent of proffered evidence to make an offer of proof as to anticipated weakness or errors in their adversary's evidence. Yet, SSA argues permitting a parent the license of a contested hearing without the requirement of an offer of proof will result in "fishing expeditions based on speculation rather than articulated objections." Such hyperbole is unnecessary. What SSA characterizes as a fishing expedition may be more accurately portrayed as a recognized method of testing adverse evidence.
Moreover, "[T]he Evidence Code, among other statutory provisions, provides ample means for the courts to control contested proceedings in the dependency courts. *804 [Citations.]" (In re James Q., supra, 81 Cal.App.4th at p. 266, 96 Cal.Rptr.2d 595.) Objections based on relevancy, undue time consumption, or any of the usual evidentiary objections contained in the Evidence Code are available to the parties. Further, the dependency statutes themselves are self-limiting. At any given point in the process, the applicable statute lists exactly what is at issue by specifying the required findings. The juvenile court is not faced with a vast sea of possible issues at every review hearing. As an example, David's counsel identified two issues: reasonable services and the child's placement.
We agree due process requires the application of a flexible balancing standard (In re Malinda S., supra, 51 Cal.3d at p. 383, fn. 17, 272 Cal.Rptr. 787, 795 P.2d 1244), it is the juvenile court's application of the flexible standard in this particular case with which we quibble. "The balancing standard considers the private interest that will be affected by the agency's action, the risk of an erroneous deprivation of that interest, the interest in informing parents of the basis for and consequences of the action and in enabling them to present their side of the story, and the agency's interest in expeditious decisionmaking as affected by the burden caused by an additional procedural requirement. [Citation.]" (In re James Q., supra, 81 Cal. App.4th at p. 267, 96 Cal.Rptr.2d 595.) At this stage in the proceedings, where the focus remains on family reunification, "due process requires the juvenile court to permit a parent to avail himself or herself of the right, if he or she chooses, to a contested review hearing without conditioning that right on a demand for an offer of proof." (Ibid.) The risk of an erroneous deprivation of a parent's fundamental interest in his or her child outweighs SSA's interest in an expeditious decision. A contested hearing is the minimal procedural safeguard available, one which is not onerous or unwarranted.
The other cases David cites in his petition have applied similar reasoning in other settings. (In re Kelly D. (2000) 82 Cal.App.4th 433, 439, 98 Cal.Rptr.2d 188 [parent has right to a contested hearing on issue of visitation under section 366.3, subdivision (e) without offer of proof]; In re Matthew P. (1999) 71 Cal.App.4th 841, 850-851, 84 Cal.Rptr.2d 269 [section 388 petition by de facto parents], In re Josiah S. (2002) 102 Cal.App.4th 403, 416-417, 125 Cal.Rptr.2d 413 [section 366.3, subdivision (d) and (e)].) We need not and do not address whether the above analysis as applied to review hearings during the reunification period pertains to other provisions of the dependency scheme.
Similarly, the cases which the juvenile court cited and on which SSA relies, In re Earl L., supra, 121 Cal.App.4th 1050, 18 Cal.Rptr.3d 74, In re Tamika T. (2002) 97 Cal.App.4th 1114, 118 Cal.Rptr.2d 873, In re Jeanette V., supra, 68 Cal.App.4th 811, 80 Cal.Rptr.2d 534, and Maricela C. v. Superior Court, supra, 66 Cal.App.4th 1138, 78 Cal.Rptr.2d 488, are distinguishable. Each of those cases involved section 366.26 permanency hearings, which occur after the termination of family reunification services. As explained above, the termination of reunification services is a critical point in dependency proceedings, a point this case has yet to realize.
In an order dated May 18, 2006, we denied SSA's request to augment the record with an addendum report. The juvenile court will have the opportunity to consider all relevant evidence at the contested 18-month review hearing, including any new information that developed since the imposition of the stay.

III

DISPOSITION
The petition is granted, the order to show cause is discharged, and the stay is *805 dissolved. The matter is remanded for a contested 18-month review hearing.
WE CONCUR: SILLS, P.J., and RYLAARSDAM, J.
NOTES
[1] Welfare and Institutions Code section 342 provides, in pertinent part, "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances ... the petitioner shall file a subsequent petition." (All further statutory references are to the Welfare and Institutions Code unless otherwise stated.)