51 Cal.Rptr.3d 864 (2006)
145 Cal.App.4th 726
In re THOMAS R. et al., Persons Coming Under the Juvenile Court Law.
Napa County Department of Health And Human Services, Plaintiff and Respondent,
v.
Robert R. et al., Defendants and Appellants.
No. A112433.
Court of Appeal of California, First District, Division Three.
December 7, 2006.
*865 Robert Navarro, by Appointment of the Court of Appeal, First District Appellate Project, for Appellant Robert R.
Carol A. Koenig, by Appointment of the Court of Appeal, Half Moon Bay, First District Appellate Project, for Appellant M.R.
Robert Westmeyer, County Counsel, Robert C. Martin, Deputy County Counsel, for Respondent.
SIGGINS, J.
Robert R. is the father of eight-year-old Daniel and 13-year-old Thomas. M.R. is Daniel's mother. Both parents appeal an order terminating their parental rights on the ground that they were denied the opportunity *866 to cross-examine the social service agency's witnesses who testified the boys were adoptable. We hold that a parent who is a party to a hearing conducted pursuant to Welfare and Institutions Code section 366.26[1] has a due process right to conduct examination and test the sufficiency of evidence offered by a social service agency on the issue of adoptability, an issue on which the agency bears the burden of proof. In this case, we find the error of disallowing examination to be prejudicial, and reverse and remand for a new permanency planning hearing.

BACKGROUND
The facts leading up to the permanency planning hearing are set forth in detail in our unpublished opinion denying both parents' writ petitions pursuant to rule 39.1(b) of the California Rules of Court. In summary, the parents have a volatile relationship and a history of drug addiction; Robert has an extensive criminal history. The children were detained in foster care when Thomas was 11 and Daniel was five after Robert smashed the rear window of mother's car with a tire jack while Daniel sat in the back seat. Both parents were offered extended reunification services. At the 18-month review hearing the court found that neither parent had made substantive progress in their case plans, that the progress they did demonstrate was insufficient to support a finding that the children could safely be returned to their care, and that the Napa County Department of Health and Human Services (the Department) had offered reasonable services. The court terminated reunification services for both parents and set a section 366.26 hearing. Both parents filed writ petitions from that ruling, which, as mentioned above, were denied.
The section 366.26 hearing was held when the boys had been in their current foster home for more than two years. A September 21, 2005, adoption assessment prepared for the hearing said that the foster parents had expressed a commitment to caring for Daniel and Thomas permanently, but were unwilling to adopt them. The foster parents wished to become the boys' legal guardians and would consider adoption in the future. The foster parents appeared to have met the boys' physical and emotional needs in an effective and positive manner and to have genuine affection for them. Both boys wanted to remain permanently with their foster parents and to stay with each other. Both boys expressed a wish to be adopted by the foster parents.
A November 22, 2005, addendum to the adoption assessment stated that the foster parents changed their minds and now wanted to adopt the boys. A preliminary assessment indicated they would be approved to adopt. An adoptive home study was being prepared.
Counsel for the Department and both children moved for an order requiring the parents to identify the particular statutory exceptions to termination of parental rights they intended to rely upon and make an offer of proof if they were intending to contest the section 366.26 hearing. Both parents opposed the request, and stated that they wanted to cross-examine the adoptions specialist and the prospective adoptive parents on the issue of adoptability. In light of the foster parents' change of mind regarding adoption between September and November, Robert's counsel argued that if the foster parents *867 had been pressured to adopt they may change their mind again after termination of parental rights and the children would become legal orphans. He argued it was improper to require an offer of proof, because "we don't know, we don't have the evidence, we can't go depose the adoptions person who wrote the report in advance and provide a transcript to the Court as our offer of proof. We need to have a hearing, we need to be able to cross-examine the preparer of the report. We perhaps need to cross-examine the foster parents as to their reasons they changed their mind as to their commitment to these children as far as ... adopting them." He also had concerns that no home study had been done and that the prospective adoptive father had a disabling heart condition that might increase the risk of his premature death.
The court found the offer of proof inadequate, denied the request for a contested hearing, and terminated parental rights. Both parents filed timely appeals.

DISCUSSION
The narrow question presented is whether the juvenile court may deny a parent the opportunity to test the sufficiency of the child welfare agency's evidence of adoptability through cross or direct examination at a section 366.26 hearing. It is apparently a question of first impression. We hold that where, as here, the proposed questioning is relevant to whether the dependent child is likely to be adopted, the answer is no. Although the court may limit any examination within the confines of what is permissible under the Evidence Code, it cannot, consistent with due process, preclude a parent from testing the evidence supporting the child welfare agency's position that the child is likely to be adopted.

I. Section 366.26

Our analysis begins with the procedures for conducting hearings to terminate parental rights set forth in section 366.26. (§ 366.26, subd. (a).) Subdivision (b) states: "At the hearing, which shall be held in juvenile court for all children who are dependents of the juvenile court, the court, in order to provide stable, permanent homes for these children, shall review the report as specified in Section 361.5, 366.21, or 366.2.22, shall indicate that the court has read and considered it, shall receive other evidence that the parties may present, and then shall make findings and orders...." Under section 366.26, subdivision (c)(1), "If the court determines, based on the assessment provided as ordered ... and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption ... unless the court finds a compelling reason for determining that termination would be detrimental" due to one or more of five enumerated circumstances.[2] While it is the child welfare agency's burden to prove a likelihood of adoption (In re Brian P. *868 (2002) 99 Cal.App.4th 616, 623, 121 Cal. Rptr.2d 326), the burden is on the parent or parents to establish the existence of one of the circumstances that are exceptions to termination. (In re Tamika T. (2002) 97 Cal.App.4th 1114, 1119, 118 Cal.Rptr.2d 873.)

II. Tamika T. and Earl L.

As it did below, the Department relies primarily on two cases from the Second Appellate District, In re Earl L. (2004) 121 Cal.App.4th 1050, 18 Cal.Rptr.3d 74 and In re Tamika T, supra, 97 Cal.App.4th 1114, 118 Cal.Rptr.2d 873, to argue that the court may require an offer of proof to determine whether the parent has evidence of significant probative value before allowing him or her to contest the Department's evidence of adoptability. These cases are inapposite. In Tamika T, the juvenile court required the mother to make an offer of proof before holding a contested hearing at which she could attempt to prove the predicate facts of the "strong parental relationship" circumstance that is an exception to termination, (§ 366.26, subd. (c)(1)(A)), and denied her request for the hearing because she could not identify any evidence she would offer in support of the exception. (In re Tamika T, supra, at p. 1119, 118 Cal.Rptr.2d 873.) The Court of Appeal affirmed, and held that it does not violate due process to require an offer of proof before setting a contested hearing on whether the parent can carry his or her burden of establishing a statutory exception to termination. (Id. at p. 1116, 118 Cal.Rptr.2d 873.) Relying on Tamika T, the court in In re Earl L., reached the same conclusion where the parent wanted a contested hearing to demonstrate the applicability of the "sibling relationship" circumstance that is also an exception to termination of parental rights. (§ 366.26, subd. (c)(1)(E).)
The critical difference between this case and the Tamika T. and Earl L. line of authority is that the courts permit offers of proof on issues where the parent has the burden of proof, like the circumstances that are exceptions to termination, while the contested factual issue in this case is the likelihood the child or children will be adopted, which the Department has the burden of proving. Precluding the parents from exploring and testing the sufficiency of the Department's evidence is fundamentally different than requiring them to describe evidence they will offer to prove a point. As recently stated in an analogous context, "At review hearings, the agency bears the burden of proof. It would be anomalous indeed to require the opponent of proffered evidence to make an offer of proof as to anticipated weakness or errors in their adversary's evidence." (David B. v. Superior Court (2006) 140 Cal.App.4th 772, 779, 44 Cal.Rptr.3d 799 [18-month review hearing].) So, too, here. It is one thing to require a parent to show he or she has relevant evidence to proffer on an issue on which he or she bears the burden of proof before scheduling a contested evidentiary hearing on that issue. It is quite another to deprive him or her of the opportunity to explore the strength of the agency's evidence that the child is likely to be adopted. Tamika T. and Earl L. do not speak to the latter point.

III. Due Process

We, therefore, consider whether principles of due process compel the court to permit Robert and M.R. to examine the social worker and prospective adoptive parents on the issue of adoptability. "While a parent in a juvenile dependency proceeding has a due process right to a meaningful hearing with the opportunity to present evidence [citation], parents in dependency proceedings `are not entitled to full confrontation and cross-examination.' *869 [Citation.] Due process requires a balance. [Citation.] The state's strong interest in prompt and efficient trials permits the nonarbitrary exclusion of evidence [citation], such as when the presentation of the evidence will `necessitate undue consumption of time.' (Evid.Code, § 352.) The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court." (Maricela C v. Superior Court (1998) 66 Cal.App.4th 1138, 1146-1147, 78 Cal.Rptr.2d 488.)
Different levels of due process protection apply at different stages of dependency proceedings. (See David B. v. Superior Court, supra, 140 Cal.App.4th at pp. 777-780, 44 Cal.Rptr.3d 799; Ingrid E. v. Superior Court (1999) 75 Cal.App.4th 751, 758-759, 89 Cal.Rptr.2d 407.) After reunification services are terminated and a section 366.26 hearing is set the focus shifts from the parent's interest in reunification to the child's need for permanency and stability. (David B., supra, at p. 778, 44 Cal.Rptr.3d 799.) For this reason, we agree that cases holding a parent has an unfettered due process right to confront and cross-examine adverse witnesses at contested hearings held before the permanency planning stage[3] does not compel the identical conclusion with respect to the section 366.26 hearing. But the parent retains a right to due process at the hearing under section 366.26, and due process "requires, in particular circumstances, a `meaningful opportunity to cross-examine and controvert the contents of the report'" if it is relevant to the issues before the court. (Maricela C. v. Superior Court, supra, 66 Cal.App.4th at pp. 1146-1147, 78 Cal.Rptr.2d 488; In re Jeanette V. (1998) 68 Cal.App.4th 811, 816-817, 80 Cal. Rptr.2d 534; In re Earl L., supra, 121 Cal.App.4th at p. 1053, 18 Cal.Rptr.3d 74; In re Johnny M. (1991) 229 Cal.App.3d 181, 190, 279 Cal.Rptr. 693; see also Cal. Rules of Court, rule 1412(j)(2).)
The strength of the Department's evidence on the likelihood of adoption was indisputably relevant at the permanency planning stage. (See § 366.26, subd. (c)(1).) While the court and agency have a valid interest in expeditiously concluding dependency matters (see Ingrid E. v. Superior Court, supra, 75 Cal.App.4th at pp. 759-760, 89 Cal.Rptr.2d 407), testing the validity of evidence on adoptability before terminating parental rights serves the interest of all parties in increasing the likelihood that no child is left a legal orphan because an anticipated adoption does not occur. Legitimate concerns about avoiding undue consumption of time on irrelevant issues can be addressed in other ways; there is no need to throw the baby out with the bathwater. "`[T]he Evidence Code, among other statutory provisions, provides ample means for the courts to control contested proceedings in the dependency courts. [Citations.]' [Citation.] Objections based on relevancy, undue time consumption, or any of the usual evidentiary objections contained in the Evidence Code are available to the parties. Further, the dependency statutes themselves are self-limiting. At any given point in the process, the applicable statute lists exactly what is at issue by specifying the required findings." (David B. v. Superior Court, supra, 140 Cal.App.4th at p. 779, 44 Cal. Rptr.3d 799.)
*870 Balancing the interests involved, we hold that where the parents wish to test whether the agency has met its burden of proof at a section 366.26 hearing, they have a due process right to do so through examination of the agency's witnesses.[4] We further find the error was prejudicial. The standard of review where a parent is deprived of a due process right is whether the error was harmless beyond a reasonable doubt. (In re Dolly D. (1995) 41 Cal.App.4th 440, 446, 48 Cal.Rptr.2d 691.) Here, the initial adoption assessment was clear that these boys were not otherwise adoptable if placement with the foster parents were to fall through. The foster parents' vacillation about adoption versus long-term guardianship suggests the possibility that they were not conclusively committed to adopting this otherwise hard-to-place sibling group, and the supplemental adoption assessment gave no explanation for their change of mind. In these circumstances, we cannot conclude that denying the parents the opportunity to cross-examine the social worker and the prospective adoptive parents was harmless beyond a reasonable doubt. We regrettably reach this conclusion in light of the strain it will entail for the children and adults who will endure further proceedings and delay, but we do so with hope that the evidence at the new section 366.26 hearing, which must take into account the boys' current status (In re Arturo A. (1992) 8 Cal.App.4th 229, 245, 10 Cal.Rptr.2d 131), will provide a more definitive indication of the foster parents' commitment to adoption.

DISPOSITION
The order terminating parental rights is reversed. The case is remanded to the juvenile court for a new section 366.26 hearing.
We concur: McGUINESS, P.J., and POLLAK, J.
NOTES
[1] Unless otherwise noted all further statutory references are to the Welfare and Institutions Code.
[2] Those circumstances are: the parents have maintained regular contact with the child and the child would benefit from the parental relationship (§ 366.26, subd. (c)(1)(A)); a child of 12 years or older objects to termination (subd. (c)(1)(B)); the child is in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding a permanent placement (subd. (c)(1)(C)); the child is living with a relative or foster parent who is unable or unwilling to adopt due to exceptional circumstances but who is able and willing to provide a stable and permanent home, and removal would be detrimental (subd. (c)(1)(D)); and adoption would cause substantial interference with a sibling relationship (subd. (c)(1)(E)).
[3] See David B. v. Superior Court, supra. 140 Cal.App.4th at page 772, 44 Cal.Rptr.3d 799 [18-month review hearing]; In re James Q. (2000) 81 Cal.App.4th 255, 96 Cal.Rptr.2d 595 [six-month review hearing]; Ingrid E. v. Superior Court, supra, 75 Cal.App.4th at page 756, 89 Cal.Rptr.2d 407 [review hearing]; In re Matthew P. (1999) 71 Cal.App.4th 841, 850-851, 84 Cal.Rptr.2d 269 [§ 388 petition by de facto parents].
[4] Our holding is not entirely at odds with In re Jeanette V., supra, 68 Cal.App.4th at page 811, 80 Cal.Rptr.2d 534, which held due process does not require permitting cross-examination of the social workers who prepared the reports for the section 366.26 hearing. The issue on which the parent sought cross-examination in Jeanette V. was one of the exceptions to termination on which the parent had the burden of proof. (§ 366.26, subd. (c)(1)(A) [parent maintained regular contact and minor would benefit from continuing the relationship].) In this respect, Jeanette V. has more in common with Tamika T. and Earl L. than this case.