Filed 8/27/13  In re A.D. CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | |
| KINGS COUNTY HUMAN SERVICES AGENCY,<br><br>      Plaintiff and Respondent,<br><br>                          v.<br><br>KIMBERLY S.,<br><br>      Defendant and Appellant. | F066743<br><br>(Super. Ct. No. 07JD0070)<br><br>**O P I N I O N** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Kings County.  Robert S. Burns, Judge.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Colleen Carlson, County Counsel, and Carrie Woolley, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Gomes, Acting P.J., Kane, J., and Detjen, J.

Kimberly S. appeals from an order terminating parental rights (Welf. & Inst. Code, § 366.26)[1] to her four-year-old daughter A.D. Kimberly contends she established termination would be detrimental to A.D. because of their parent-child relationship (§ 366.26, subd. (c)(1)(B)(i)). We disagree and affirm.

### PROCEDURAL AND FACTUAL SUMMARY

Kimberly has six children, ranging in age from 2 to 19 years. She also has a long history of methamphetamine use, resulting in the loss of her children. Her four oldest children were placed with their maternal grandmother under a permanent plan of guardianship in 2009 after Kimberly failed to reunify with them. In 2010, the juvenile court terminated the guardianship after the maternal grandmother was convicted on a criminal charge. The juvenile court reinstated dependency of the children and ordered family maintenance for Kimberly. In the interim, Kimberly gave birth to two daughters, A.D., the subject of this appeal, and Samantha.

These proceedings were initiated in May 2011 after Kimberly left the children home alone at approximately 2:30 p.m. The oldest child present was Kimberly's then 13-year-old son, Phillip. At approximately 7:30 p.m., the children were discovered at a park. A passerby caught then seven-month-old Samantha as she was about to fall from a bench. When Kimberly was located, she was arrested for child endangerment, being under the influence of methamphetamine, and possession of stolen property.

The Kings County Human Services Agency (agency) took the children into protective custody. Then two-year-old A.D. and Samantha were placed together in a foster home. The agency also filed a dependency petition alleging Kimberly's chronic drug abuse placed the children at a substantial risk of harm.

---

[1]  All statutory references are to the Welfare and Institutions Code.

2

In July 2011, the juvenile court removed Kimberly's six children from her custody and denied her reunification services because of her chronic and extensive drug abuse. The court ordered Kimberly's three oldest children returned to the custody of their father and transferred their case to Sonoma County. The court ordered reunification services for the biological fathers of A.D. and Samantha and set a section 366.26 hearing as to Kimberly's then four-year-old son, J.S.

In its report for the six-month review hearing as to A.D. and Samantha, the agency reported Samantha's father, Gabriel, had made progress, but A.D.'s father had not. It also reported Kimberly received supervised visits once a month for one hour, with the exception of October and November 2011 when she was incarcerated. According to the agency, A.D. responded very positively to Kimberly during visitation. Upon seeing Kimberly, A.D. immediately smiled and hugged and kissed her.

In January 2012, the juvenile court terminated Kimberly's parental rights at a section 366.26 hearing as to J.S. J.S. was adopted five months later. Also in January 2012, the juvenile court continued reunification services for Gabriel as to Samantha, but terminated reunification services for A.D.'s father and set a section 366.26 hearing for May 2012 as to her.

Meanwhile, Kimberly filed a petition under section 388 asking the juvenile court to modify its prior order denying her reunification services. She attached documentation to her petition evidencing her participation in a dual diagnosis program and Alcoholics Anonymous/Narcotics Anonymous meetings and completion of various independent study courses. As part of the dual diagnosis program, Kimberly participated in anger management and parenting instruction.

In its report for the section 366.26 hearing, the agency recommended the juvenile court terminate Kimberly's parental rights as to A.D. and order a permanent plan of adoption. The agency stated A.D. had a positive relationship with Kimberly but opined

3

the benefit of adoption outweighed any benefit she would derive from a continuing relationship with her. The agency further reported A.D. was with a foster family that did not want to adopt her, but the agency was confident A.D. could be placed with either an extended family member willing to adopt her or with an approved non-related adoptive family.

In March 2012, the juvenile court conducted a contested hearing on Kimberly's section 388 petition. Kevin Andrews, Kimberly's case manager with Kings View counseling, testified he knew Kimberly from the dual diagnosis program. He testified she was fully participating in the program and would enter the third of three phases in seven weeks.

Kimberly's pastor testified Kimberly participated in a 12-step-like program at the church and had a sponsor. Kimberly's probation officer testified Kimberly was successfully meeting the terms of her probation. He said she was subject to random drug testing, but he had not asked her to test and had no reason to believe she was using drugs. He further testified she provided him the results of a hair follicle test she took on her own and the results were negative.

Kimberly testified she was released from custody in early December 2011 and went to Kings View the following day to participate in their services. She said she was benefitting from services because her attitude had changed and she had a support group for the first time. She also believed it would be in the children's best interest for her to receive services because she is their mother and they belong with her. She explained that she was overwhelmed with caring for six children and made mistakes but was trying to rectify them.

On cross-examination, Kimberly testified she had not used drugs for nine months. She completed a residential drug treatment program 12 years previously and attempted

4

residential drug treatment in 2000 but quit halfway through the program. She also participated in an outpatient drug treatment program in Sonoma County.

At the conclusion of the hearing, the juvenile court denied Kimberly's section 388 petition, finding there was not a change in circumstances because, though she was participating in services, she had not completed them.

The section 366.26 hearing was continued and set as a contested hearing in October 2012. Meanwhile, Gabriel filed a section 388 petition asking the juvenile court to deem him A.D.'s presumed father. Kimberly also filed a section 388 petition renewing her request for reunification services based on her continuing progress. Among the documentation she attached to her petition was a letter from her therapist projecting her completion of the dual diagnosis program in November 2012. The juvenile court scheduled the section 388 petitions to be heard on the date set for the contested section 366.26 hearing (combined hearing).

The juvenile court convened the combined hearing in October 2012. Kimberly testified she was arrested approximately two weeks before the hearing for driving under the influence of alcohol. She denied having a problem with alcohol and admitted her lapse in judgment, but said she was serious about her recovery and explained she "just wanted to feel normal" when her boss and coworkers invited her out to celebrate her new job.

Kimberly also testified she completed the dual diagnosis, anger management and parenting programs and continued to test negative for drugs. She estimated A.D. had been out of her custody for about 18 months but she visited her once a month for an hour. She took A.D. food and presents and they played, talked and took pictures. She said A.D. called her "Mommy."

After hearing all the evidence on Kimberly and Gabriel's section 388 petitions, the juvenile court denied both. The juvenile court continued the section 366.26 phase of the

5

hearing to the following week. Kimberly's attorney asked the juvenile court to consider Kimberly's testimony during the section 388 phase of the hearing for the section 366.26 hearing.

At the continued hearing, the juvenile court awarded Gabriel sole legal and physical custody of Samantha. The court continued the section 366.26 hearing to perfect notice to A.D.'s father.

In February 2013, the juvenile court convened the contested section 366.26 hearing. The juvenile court ruled, by stipulation, the evidence presented at the section 388 phase of the hearing would also be considered. Kimberly's attorney did not present any further evidence. He objected to adoption and argued Kimberly and A.D. were bonded and breaking that bond could "conceivably" cause more harm to A.D.

At the conclusion of the hearing, the juvenile court found A.D. was an adoptable child, terminated Kimberly's parental rights and selected adoption as a permanent plan. This appeal ensued.

**DISCUSSION**

Kimberly contends there was insufficient evidence to support the juvenile court's failure to find A.D. shared a beneficial relationship with her so that termination of parental rights would be detrimental to A.D. (§ 366.26, subd. (c)(1)(B)(i).) According to Kimberly, the juvenile court should not have terminated her parental rights because she parented A.D. for the first half of A.D.'s life, was appropriate during visitation, and maintained regular visitation with her. We find no error in the juvenile court's termination of Kimberly's parental rights.

"'Adoption, where possible, is the permanent plan preferred by the Legislature.' [Citation.] If the court finds a minor cannot be returned to his or her parent and is likely to be adopted if parental rights are terminated, it must select adoption as the permanent

6

plan unless it finds termination of parental rights would be detrimental to the minor under one of [the] specified exceptions." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Section 366.26, subdivision (c)(1)(B)(i), the exception at issue here, bars termination of parental rights if termination would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." This exception is often referred to as the "beneficial relationship" exception.

The requirement that the child "benefit from continuing the relationship" has been interpreted to refer to a "parent-child" relationship that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

The parent bears the burden of establishing the existence of the beneficial relationship exception. (*In re Thomas R.* (2006) 145 Cal.App.4th 726, 731.) To meet the burden of proof necessary for the exception to apply, "the parent must show more than frequent and loving contact or pleasant visits … [since] '[i]nteraction between natural parent and child will always confer some incidental benefit to the child.…' [Citation.] [Instead,] the parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment from child to parent." (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at pp. 953-954.)

7

The beneficial relationship exception in section 366.26, subdivision (c)(1)(B)(i) involves a two-part test to determine whether: (1) the parent maintained regular visitation and contact with the child; and (2) the child would benefit from continuing the relationship. For the exception to apply, "the parent-child relationship [must] promote the well-being of the child to such a degree that it outweighs the well-being the child would gain in a permanent home with new, adoptive parents. [*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.] A juvenile court must therefore: 'balance ... the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' (*Id*. at p. 575.)" (*In re Lorenzo C*. (1997) 54 Cal.App.4th 1330, 1342.)

When a court rejects a detriment claim and terminates parental rights, the appellate issue is whether the juvenile court abused its discretion in doing so. (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.) To conclude there was an abuse of discretion, the proof offered must be uncontradicted and unimpeached so that discretion could be exercised in only one way, compelling a finding in the appellant's favor as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *In re I.W*. (2009) 180 Cal.App.4th 1517, 1528.) Based on our review of the record, we conclude the juvenile court properly exercised its discretion in determining the beneficial relationship exception did not apply in Kimberly's case.

There is no dispute Kimberly maintained regular contact with A.D. and thus satisfied the first part of the two-part test. Kimberly failed to establish, however, the second part, that A.D. would benefit from continuing her relationship with Kimberly. While Kimberly presented evidence A.D. recognized Kimberly as her mother and they

8

had pleasant visits during which they enjoyed loving contact, Kimberly did not establish she fulfilled a parental role. Nor did she establish it would be detrimental to A.D. to sever their relationship.

Kimberly argues the parent/child bond she shared with A.D. during the two years she parented her and A.D.'s positive reaction to her evidence the kind of relationship envisioned by the beneficial relationship exception. Kimberly likens herself to the mother in *In re Amber M.* (2002) 103 Cal.App.4th 681 (*Amber M.*), who "visited as often as she was allowed and acted in a loving, parental role with [her daughter] when permitted visitation." (*Id.* at p. 690.) The *Amber M.* court found the beneficial relationship exception applied and reversed the judgment terminating parental rights. (*Id.* at p. 691.)

*Amber M.*, however, is distinguishable on a key point. A psychologist who conducted a two-hour bonding study testified it would be detrimental to sever Amber's relationship with her mother. (*Amber M.*, *supra*, 103 Cal.App.4th at p. 689.) Kimberly presented no evidence that severing A.D.'s relationship with her would be detrimental to A.D.

Under these circumstances, the juvenile court reasonably could determine termination would not deprive A.D. of a substantial, positive emotional attachment such that she would be greatly harmed. Accordingly, the juvenile court did not abuse its discretion by terminating Kimberly's parental rights.

## DISPOSITION

The juvenile court's order issued on February 15, 2013, terminating Kimberly's parental rights is affirmed.

9