Filed 3/14/14  In re J.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.C. et al, Persons Coming Under the Juvenile Court Law. | |
| | F068011 |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. JJV066587A, B) |
| Plaintiff and Respondent, | |
| v. | **OPINION** |
| S.C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Tulare County. Hugo Loza, Commissioner.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kathleen Bales-Lange, County Counsel, John A. Rozum and Jason Chu, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Sarah C. (mother) appeals from orders of the juvenile court terminating her parental rights after the court found it likely her children R.M. and J.C. would be adopted.  (Welf. & Inst. Code,[1] §§ 366.26, 395.)

Mother contends that the juvenile court violated her due process rights when it denied her request for a contested section 366.26 hearing, and she challenges the sufficiency of the evidence to support the adoptability findings.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother was arrested in Stanislaus County on September 18, 2012.  At the time of her arrest, she had a bag of methamphetamine, methamphetamine pipes, and a scale in her car with her.  Her one-year-old son, R.M., was also in the car, in an unsecured car seat.  Stanislaus County CPS took R.M. into protective custody and then released him to the care of a maternal uncle and aunt.  R.M.'s siblings, M.C. and J.C., were already in the care of these same relatives.

When mother was released from incarceration on September 20, 2012, she instructed R.M.'s father (father) to pick up J.C. and R.M. from the relatives' care, which he did without knowledge or approval of Stanislaus County CPS.  Father took the two children to Riverside County.  M.C. was taken by her own father to the Bay Area.[2]

*Riverside County Proceedings*

On October 9, 2012, father was arrested for strong arm robbery, resisting arrest, and a probation violation.  Riverside County DPPS-CPS learned of father's arrest and found R.M. and J.C. at their paternal grandmother's home.  They were taken into protective custody.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    Only R.M. and J.C. are involved in this appeal.

A section 300 petition filed October 12, 2012, alleged that mother had substance abuse issues and was unable to provide a safe and stable home for the children. The petition further alleged that mother was transient, that J.C.'s biological father was unknown, and that R.M.'s father was incarcerated.

Mother was present at the detention hearing October 15, 2012, in Riverside County. The juvenile court found a prima facie showing that R.M. and J.C. fell under the jurisdiction of the juvenile court pursuant to section 300, subdivisions (b) and (g), and ordered the children detained. They were placed in a foster family home in Riverside County. A jurisdiction/disposition hearing was set for November 5, 2012.

In the report prepared in anticipation of jurisdiction/disposition, mother admitted that she started using methamphetamine when she was in a relationship with M.C.'s father, nine years earlier. Over the ensuing years, she had used frequently for two and a half years, then occasionally for three years, then stopped three years ago before she relapsed one time in September of 2012. Mother said she was now in a meaningful and positive relationship and that her "partner" (who is not identified as this point) was supportive of her efforts to regain custody of J.C. and R.M. According to mother, she was very motivated to pursue reunification services as she wanted the children returned to her as soon as possible. Mother was living in Tulare County at the time.

At the November 5, 2012, jurisdiction hearing, mother did not contest jurisdiction, waived her right to a trial, and submitted on an amended petition. The Riverside County juvenile court found true the amended allegations, removed the children from mother, and ordered reunification services for mother. Mother was to be given unsupervised visits after it was deemed safe to do so. The juvenile court authorized that an ex parte request could be submitted when appropriate to address overnight/weekend visits and family maintenance services for mother. The Riverside County juvenile court transferred the case to Tulare County because mother was residing in Visalia.

*Tulare County Proceedings*

A Tulare County HHSA/Child Welfare Services social worker interviewed mother on November 16, 2012, for the Tulare County transfer-in report. According to mother, she moved to Visalia to be closer to her family, including her mother and other relatives who would give her family support. Mother was involved with a domestic partner, S.S., and living in S.S.'s residence. Mother's earlier case plan consisted of parenting and domestic violence classes, substance abuse treatment, and individual therapy. This plan was adopted at the November 26, 2012, transfer-in hearing.

The juvenile court ordered continued twice a week supervised visits, with discretion for the social worker to increase them and lift supervision. The juvenile court wanted every effort made to place the children with a relative in Tulare County. Mother told the juvenile court that, if her own mother wasn't able to be assessed for placement, mother would move out of S.S.'s place and S.S. could be assessed for placement.

The section 366.21, subdivision (e) six-month review hearing was set for April 25, 2013.

The report prepared in anticipation of the review hearing stated that mother, despite earlier claims that she wished to do whatever was necessary to have her children returned to her, made herself unavailable. The social worker was last able to make contact with mother on February 25, 2013, and unable to make contact with her at all in March and April of 2013. Mother's mother informed the social worker on April 5, 2013, that mother was no longer participating in her case plan and that she appeared to have given up on reunifying with her children.

According to the social worker, mother failed to contact the domestic violence service provider and failed to provide proof of attendance for parenting classes. Mother did not attend substance abuse evaluations in December 2012 and January 2013. When she did complete an evaluation in late January 2013, she was discharged three weeks later

4.

for missing multiple appointments. Mother failed to random drug test beginning in January 2013. Mother did complete 12 sessions with her mental health therapist.

The children had been placed with S.S. since December 20, 2012. Both mother and S.S. claimed they were no longer in a relationship with each other. Mother's visits with the children were supervised by S.S., who claimed they were appropriate and positive for the children. S.S. did state that mother was visiting the children less and less often, seeing them only about once every two weeks. S.S. stated that it was emotionally difficult for the children when mother failed to show for visits. The social worker recommended reducing mother's visits to two hours once a week, supervised by S.S.

According to the social worker, the children were doing well in S.S.'s care and did not have any significant behavioral or medical issues. J.C. was in good health, developmentally meeting all of his milestones, and did not exhibit any emotional and mental health concerns. Although R.M. was also in good health, he showed some signs of delay. His vocabulary was smaller than appropriate for his age and he was not using words together. A referral was made for R.M. to be evaluated. The social worker observed J.C. and R.M.'s bond with S.S., calling her "mom" and going to her gladly.

The social worker recommended terminating mother's reunification services and setting a section 366.26 selection and implementation hearing to consider a permanent plan. An adoption assessment was completed on April 3, 2013, and was consistent with the social worker's recommendation, and determined that the children were adoptable. Adoption with S.S. was anticipated and both mother and S.S. were in agreement with this plan.

A copy of the section 366.21, subdivision (e) review report and notice of the upcoming hearing was mailed to mother on April 11, 2013.

The section 366.21, subdivision (e) review hearing was held April 25, 2013. Mother was present with counsel. At the hearing, mother's counsel argued that mother would like her services continued, but "understands and stated to me that she has been

5.

overwhelmed with all of her services and this has affected her progress." Counsel also requested that visits not be reduced but continued at twice a week.

The juvenile court terminated mother's reunification services and set a section 366.26 hearing for August 8, 2013. The juvenile court found it detrimental to return J.C. and R.M. to mother. It also found mother had been provided reasonable services, but that mother had failed to participate regularly or make any substantive progress. The juvenile court found that mother's time to reunify with R.M. had expired since he was under three years at the time of removal; J.C. was part of that sibling group; and there was no substantial probability of return if mother was given another six months of services. Visits remained as previously ordered. The juvenile court suspended mother's rights to make any medical or education decisions and vested those rights with S.S.

A section 366.26 hearing was set for August 8, 2013.

The report prepared in anticipation of the permanency hearing stated that R.M., at age 20 months, had difficulty speaking because he was unable to move or lift his tongue up to his hard palate. A surgical procedure to correct this was scheduled.

In its report in anticipation of the section 366.26 hearing, the social worker recommended that mother's parental rights be terminated in order to free J.C. and R.M. for adoption by S.S., with whom they had lived eight months. Mother told the social worker that she was "clearly" in favor of S.S. adopting both children. Although mother's visits with the children in S.S.'s home went well, S.S. did not believe the children were attached to mother as they did not ask about her when she was gone. The social worker opined that the children were attached to mother and enjoyed visits with her, but they did not appear to have a true parent-child relationship with her. Instead, the children relied on S.S. to fulfill the parental role in their lives. S.S. was appropriately attentive to the children's needs.

The social worker found that both children had developed a close bond and attachment to S.S. in the eight months they had been together. J.C., age five, had known

6.

S.S. since he was two; R.M., age one, had known her since birth. Both boys referred to her as "mom," and looked to her for direction and comfort to meet their emotional and physiological needs. The social worker believed that, at their young age, the children needed stable and consistent attachments to at least one healthy adult in order to achieve maximum well-being.

The section 366.26 hearing was held August 8, 2013. Mother did not appear but was represented by counsel. At the hearing, mother's counsel made the following request:

> "I want to set this contested because even though it states what it does at page 2 and page 11,[3] I haven't talked to my client and I don't want to submit the adoption away without her -- or submit to the adoption probably being granted without talking to her."

The juvenile court asked if mother had received notice, and county counsel stated that she had. The juvenile court noted mother's statements in the section 366.26 report expressing her preference for adoption with S.S. The juvenile court then asked county counsel for a recommendation on how to proceed with the hearing. County counsel, with agreement of the children's attorney, recommended that the section 366.26 hearing proceed that day. When the juvenile court asked for any additional comments from mother's counsel, he stated only:

> "Yes, that at page 12 of the report it indicates that [mother] was given visitation orders on November 26th, 2012, and they were going well, they were appropriate and positive for the children. Then the social worker writes that it appears that they became inconsistent in visiting the children. So with that I will submit."

The juvenile court followed the Tulare County HHSA/Child Welfare Services recommendation of adoption and found,

---

**3**    These page numbers are referring to the August 8, 2013, section 366.26 report, which states mother's preference that the children be adopted by S.S.

7.

"the children are adoptable and that the current care providers express their desire to provide permanency to the children and adoption has been selected as appropriate and the plan most suitable and in the best interest of the children."

The juvenile court terminated mother's parental rights and designated S.S. as the children's prospective adoptive parent. The juvenile court ordered no visits for mother and that any visits would be up to S.S. to determine.

## DISCUSSION

At the section 366.26 hearing, mother's counsel asked the juvenile court to set a contested hearing because he had not spoken to mother and did not want to submit on the adoption without talking to her. Mother contends that her due process rights were violated when the juvenile court denied her counsel's request for a contested section 366.26 hearing. We disagree.

The procedures for conducting hearings to terminate parental rights are set forth in section 366.26. (§ 366.26, subd. (a).) Subdivision (b) states:

> "At the hearing, which shall be held in juvenile court for all children who are dependents of the juvenile court, the court, in order to provide stable, permanent homes for these children, shall review the report as specified in Section 361.5, 366.21, or 366.22, or 366.25, shall indicate that the court has read and considered it, shall receive other evidence that the parties may present, and then shall make findings and orders .…"

Under section 366.26, subdivision (c)(1)(B), "If the court determines, based on the assessment provided as ordered … and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption … unless … [¶]…[¶] [t]he court finds a compelling reason for determining that termination would be detrimental" due to one or more of five enumerated circumstances.[4] While it is the child welfare agency's burden to prove a likelihood of adoption (*In re Brian P.* (2002) 99 Cal.App.4th 616, 623),

---

[4]    Those circumstances are: that parents have maintained regular contact with the child and the child would benefit from the parental relationship (§ 366.26, subd.

the burden is on the parent or parents to establish the existence of one of the circumstances that are exceptions to termination. (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1119 (*Tamika T.*)

In *Tamika T.*, the juvenile court required the mother to make an offer of proof before holding a contested hearing at which she could attempt to prove the predicate facts of the strong parental relationship circumstances that is an exception to termination (referring to former § 366.26, subd. (c)(1)(A), which is now (c)(1)(B)(i)), and denied her request for the hearing because she could not identify any evidence she would offer in support of the exception. (*Tamika T., supra,* 97 Cal.App.4th at p. 1119.) The Court of Appeal affirmed and held that is does not violate due process to require an offer of proof before setting a contested hearing on whether the parent can carry his or her burden of establishing a statutory exception to termination. (*Id.* at p. 1116; see also *In re Earl L.* (2004) 121 Cal.App.4th 1050 (*Earl L.*) [same conclusion where parents wanted a contested hearing to demonstrate the applicability of the "sibling exception" circumstance (referring to former § 366.26, subd. (c)(1)(E), which is now (c)(1)(B)(v)].)

In *In re Thomas R.* (2006) 145 Cal.App.4th 726 (*Thomas R.*), counsel for the Department of Health and Human Services and both children moved for an order requiring the parents to identify the particular statutory exception to termination of parental rights they intended to rely upon and make an offer of proof if they were intending to contest the section 366.26 hearing. The parents opposed the request, stating

---

(c)(1)(B)(i)); a child of 12 years or older objects to termination (*id.,* subd. (c)(1)(B)(ii)); the child is in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding a permanent placement (*id.,* subd. (c)(1)(B)(iii)); the child is living with a relative or foster parent who is unable or unwilling to adopt due to exceptional circumstances but who is able and willing to provide a stable and permanent home, and removal would be detrimental (*id.,* subd. (c)(1)(B)(iv)); and adoption would cause substantial interference with a sibling relationship (*id.,* subd. (c)(1)(B)(v)).

they wished to cross-examine the adoptions specialist and the prospective adoptive parents on the issue of adoptability. The parents were concerned that the foster parents had changed their minds on the issue of adoption in a short period of time, suggesting they may have been pressured to adopt and might change their minds again. Further, no home study had been done, and the prospective adoptive father had a disabling heart condition. The juvenile court found the offer of proof inadequate, denied the request for a contested hearing, and terminated parental rights. (*Thomas R., supra,* at p. 730.)

The question before the court in *Thomas R.* was whether the juvenile court may deny a parent the opportunity to test the sufficiency of the child welfare agency's evidence of adoptability through cross- or direct examination at a section 366.26 hearing. The court in *Thomas R.* determined that "where, as here, the proposed questioning is relevant to whether the dependent child is likely to be adopted, the answer is no." (*Thomas R., supra,* 145 Cal.App.4th at p. 731.) "Although the court may limit any examination within the confines of what is permissible under the Evidence Code, it cannot, consistent with due process, preclude a parent from testing the evidence supporting the child welfare agency's position that the child is likely to be adopted." (*Ibid.*)

The court in *Thomas R.* distinguished its reasoning from that in *Tamika T.* and *Earl L.* by stating,

> "The critical difference between his case and the *Tamika T.* and *Earl L.* line of authority is that the courts permit offers of proof on issues where the parent has the burden of proof, like the circumstances that are exceptions to termination, while the contested factual issue in this case is the likelihood the child or children will be adopted, which the Department has the burden of proving. Precluding the parents from exploring and testing the sufficiency of the Department's evidence is fundamentally different than requiring them to describe evidence they will offer to prove a point." (*Thomas R., supra,* 145 Cal.App.4th at p. 732.)

10.

In other words, it is one thing to require a parent to show he or she has relevant evidence to proffer on an issue on which he or she bears the burden of proof before scheduling a contested evidentiary hearing on that issue; it is quite another to deprive him or her of the opportunity to explore the strength of the agency's evidence that the child is likely to be adopted. (*Ibid.*)

> "Different levels of due process protection apply at different stages of dependency proceedings. [Citations.] After reunification services are terminated and a section 366.26 hearing is set the focus shifts from the parent's interest in reunification to the child's need for permanency and stability. [Citation.] For this reason, we agree that cases holding a parent has an unfettered due process right to confront and cross-examine adverse witnesses at contested hearings held before the permanency planning stage do not compel the identical conclusion with respect to the section 366.26 hearing. But the parent retains a right to due process at the hearing under section 366.26, and due process 'requires, in particular circumstances, a "meaningful opportunity to cross-examine and controvert the contents of the report"' *if it is relevant to the issues before the court*. [Citations.]" (*Thomas R., supra,* 145 Cal.App.4th at p. 733, fn. omitted.)

In mother's case, her counsel requested a contested section 366.26 hearing, but failed to specify any issues of contention. Contrary to mother's inference on appeal, counsel did not indicate that mother wished to cross-examine any witnesses on the issue of adoptability. Instead, counsel stated only that he had not spoken to mother and did not want to submit on the adoption or probability of adoption being granted without speaking with her. Counsel did not offer any explanation for mother's absence at the hearing. The juvenile court specifically asked if mother was provided notice of the hearing and county counsel stated that she was. Mother's counsel did not argue otherwise. The only other comment made by mother's counsel at the hearing was pointing out that visits with the children were appropriate and positive, but that they had become inconsistent.

We agree with respondent that it would be a stretch to conclude, on these facts, that at the time of the section 366.26 hearing, mother wished to test whether the Tulare

County HHSA/Child Welfare Services had met its burden of proof on the issue of adoptability.

Assuming, for the sake of argument, that mother's request was sufficient and should have been granted, we find the error harmless, and in doing so reject her claim of insufficiency of the evidence of adoptability. The standard of review where a parent is deprived of a due process right is whether the error was harmless beyond a reasonable doubt. (*In re Dolly D.* (1995) 41 Cal.App.4th 440, 446.) Termination of parental rights is authorized only if the court finds the children are adoptable. (§ 366.26, subd. (c)(1).) However, "[a]lthough a finding of adoptability must be supported by clear and convincing evidence, it is nevertheless a low threshold; The court must merely determine that it is 'likely' that the child will be adopted within a reasonable time. [Citations.] We review that finding only to determine whether there is evidence, contested or uncontested, from which a reasonable court could reach that conclusion. It is irrelevant that there may be evidence which would support a contrary conclusion. [Citation.]" (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292; see also *In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561-1562 ["We give the court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming."].)

The issue of adoptability turns on whether the child's age, physical condition, and emotional state make it difficult to find the child an adoptive home. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 (*Sarah M.*).) "Hence, it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent 'waiting in the wings.' [Citations.]" (*Ibid.*) Nonetheless, "[u]sually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely

to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*. [Citation.]" (*Id.* at pp. 1649-1650.)

When a child is not considered to be generally adoptable because of his or her age, poor physical health, physical disability, or emotional instability, he or she may be found to be "specifically" adoptable if a person has been identified who is willing to adopt the child. (*Sarah M., supra,* 22 Cal.App.4th at p. 1650; *In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1408.) In specific adoptability situations, "'the analysis shifts from evaluating the characteristics of the child to whether there is any legal impediment to the prospective adoptive parent's adoption and whether he or she is able to meet the needs of the child.' [Citation.]" (*In re Jose C.* (2010) 188 Cal.App.4th 147, 158.)

In *Thomas R.* the initial adoption assessment was clear that the children were not otherwise adoptable if placement with the foster parents were to fall through. In addition, the foster parents' vacillation about adoption versus long-term guardianship suggested the possibility that they were not conclusively committed to adopting "this otherwise hard-to-place sibling group." (*Thomas R., supra,* 145 Cal.App.4th at p. 734.) The supplemental adoption assessment gave no explanation for the foster parents' change of mind. "In these circumstances, we cannot conclude that denying the parents the opportunity to cross-examine the social worker and the prospective adoptive parents was harmless beyond a reasonable doubt." (*Ibid.*)

We reach the opposite conclusion here. The adoption assessment for J.C. and R.M. was that they were generally adoptable and the juvenile court had no reservations in finding them so. The assessment did not find the children were in a hard to place sibling group. They were young and, other than R.M.'s speech delay caused by a condition which was to be surgically corrected, both children were physically and mentally on track. In addition, the children were bonded and attached with their caregiver S.S. and she was committed to adopting the children. Because the evidence is sufficient to support the juvenile court's finding that the children were generally adoptable, mother's argument

concerning S.S.'s suitability is not relevant to our analysis.  (*Sarah M., supra,* 22 Cal.App.4th at p. 1650.)

We find sufficient evidence to support the juvenile court's finding of adoptability and any failure on the part of the juvenile court to set a contested section 366.26 hearing was harmless beyond a reasonable doubt.

## DISPOSITION

The orders terminating mother's parental rights are affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
LaPORTE, J.*

---

*	Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.