Filed 7/21/15  N.A. v. Super. Ct. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| N.A.,<br><br>    Petitioner;<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Real Party in Interest. | G051893<br><br>(Super. Ct. Nos. DP023998, DP023999, & DP025567)<br><br>O P I N I O N |

Original proceedings; petition for writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Gary G. Bischoff, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.)  Petition denied.

Frank Ospino, Public Defender, Laura Jose, Assistant Public Defender, Michael T. Mooney and Dennis M. Nolan, Deputy Public Defenders, for Petitioner.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen, Supervising Deputy County Counsel, and Jeannie Su, Deputy County Counsel for Real Party in Interest.

Law Offices of Harold LaFlamme and JoEllen Alicie for Minors.

\* \* \*

Petitioner N.A. (mother) seeks extraordinary relief (Cal. Rules of Court, rule 8.452) in the dependency cases of her children O.A., H.A., and A.A. These cases followed an unusual path, in that an earlier Welfare and Institutions Code section 366.26 hearing was cancelled (upon stipulation of the parties) to give mother one last chance to reunify with her children.[1] But mother's final chance was conditioned on a zero tolerance drug testing regimen. When mother tested positive for methamphetamine, the court immediately rescheduled the section 366.26 hearing without conducting a review hearing. The question presented is whether the juvenile court deprived mother of due process when it declined to proceed with a review hearing or listen to mother's testimony, which (according to an offer of proof) would have amounted to her denying she actually ingested drugs. We deny mother's petition. There was no due process violation and any error that might have occurred was harmless.

FACTS

Two of the three dependency cases began in July 2013 when mother gave birth to H.A. Both mother and H.A. tested positive for methamphetamine, and mother admitted she had not obtained prenatal care during the final months of her pregnancy.

---

[1] All statutory references are to the Welfare and Institutions Code.

2

Mother and father[2] pleaded no contest to a failure to protect allegation in the dependency petition (§ 300, subd. (b)).  The court sustained the petition and declared H.A. and his (at the time) one-year-old brother O.A. to be dependents of the court.  H.A. and O.A. were placed with relatives.

Mother made enough progress during the next year that, upon recommendation of the Orange County Social Services Agency (SSA), the court returned H.A. and O.A. to mother's custody in July 2014 under a family maintenance plan.  But mother tested positive for methamphetamine on August 15 and 25, 2014.  Moreover, mother was convicted of driving under the influence of alcohol in September 2014.  SSA detained H.A. and O.A. and filed a supplemental dependency petition in late September 2014.

The dependency petition for newborn daughter A.A. was filed in October 2014.  Among other things, this petition cited the two positive methamphetamine tests in August 2014 (i.e., while mother was pregnant with A.A.).  A.A. was detained and placed with an extended family member.  In November 2014, the court found the allegations in the A.A. petition and the boys' supplemental petition to be true and declared all three children to be dependents of the court.

An SSA report submitted to the court in October 2014 discussed mother's drug abuse and her adamant denials that she had used drugs.  In addition to her two positive results in August 2014, the drug patch mother wore indicated positive tests on September 12 and 22, 2014 for amphetamine and methamphetamine.  Mother claimed the results from the drug patch she had been wearing were false positives.

But the social worker investigated mother's suggestion that the drug patch indicated false positives and was unconvinced.  "[A]mphetamine would only show if the drug was ingested and went through the body.  [I] contacted drug patch staff who

---

[2] Father does not take part in this petition and our recitation of facts therefore ignores his conduct for the most part.

3

confirmed the validity and reliability of the drug patch. [I] was informed that the mother's specific drug test results [were] indicative of clear use. . . . [¶] [I] initially questioned how reliable the drug patch is. However, PharmChem is the contract provider accepted by the court and has been found by the Court to be valid, and reliable. [I] still researched and found articles indicating that environmental factors can cause a false positive. When [I] contacted PharmChem staff and an expert toxicologist, they knew exactly which article [I] read and supported the position of validity in reporting that these tests were conducted under extreme, unrealistic conditions. They also reported that the Courts have upheld the validity of the drug patch over any other tests. . . . [T]he drug patch is more sensitive in reading positive results."

"[M]other has not been completely truthful in the past. . . . [M]other denied drug use when her child was born positive for methamphetamine. She fabricated a story of how methamphetamine could have gotten in her system. She later admitted she used." Mother insisted to the social worker that she had only used drugs a single time in her life — just before H.A.'s birth. But mother's ex-husband observed her using methamphetamine and cocaine when she was in high school.

In sustaining the petitions in November 2014, the court bypassed reunification services and set a section 366.26 hearing for March 2015 to establish a permanent plan for the three children. Mother and father submitted on the SSA reports, did not seek to present evidence, and did not seek to cross-examine any witnesses identified in the SSA reports. No relief was sought at the appellate court from the order setting the initial section 366.26 hearing.

Thus, when the parties returned to court for a section 366.26 hearing on March 3, 2015, it appeared as if the dependency cases were nearing a conclusion, perhaps with the termination of the parental rights of mother and father. Remarkably, however, in response to a section 388 petition filed by mother citing her recent progress in addressing the causes of the dependency cases, all interested parties stipulated to provide one more

4

chance to mother to reunify with her children. The stipulation stated the court would order four months of reunification services for mother and continue the case to a review hearing on July 8, 2015. But "should the mother have a missed, unexcused, positive or dilute Medtox or drug patch, [family reunification] services will terminate forthwith. SSA to notify the court via ex parte regarding any missed, unexcused, positive or dilute test." The court accepted the parties' stipulation, but specifically warned mother that it provided for "zero tolerance" with regard to "missed, dilute or positive" tests. Mother did not object at the time to the terms of the stipulation.

Mother had two positive patch tests for methamphetamine on March 20 and 27, 2015. Mother again claimed these tests were false positives, and pointed to the negative results of other drug testing during the same time period. But PharmChem, the company providing the sweat patch, informed the social worker that the patch registers drug use not picked up by urine testing.

Filing a section 388 petition, SSA sought to enforce the stipulation by vacating the review hearing and resetting a section 366.26 hearing. Mother objected to this procedure, arguing due process required the court to allow her an opportunity to challenge the positive drug patch result. Mother appeared in court and was prepared to testify "she did not use any methamphetamine or any other drugs in the relevant time period" and "both patch results were false positives."

The court enforced the stipulation. "Mother agreed to this set of criteria and the language is explicit that any positive drug patch would result in reunification services being terminated forthwith." The court implicitly rejected the notion that it could ever be convinced by a mere denial under oath by mother: "[A] false positive is a very rare event. Two consecutive false positives is remarkably rare. The fact that both false positives tested positive for mother's drug of choice and not the entire list or one of the other [drugs] is even more rare and to do that twice is shockingly rare." "This came up positive twice for mother's drug of choice and I think that with that in mind, there's

5

very little here to suggest that there is some problem with the testing process." "[U]nless I have . . . clear evidence to the contrary, then I think that the agreement that counsel have negotiated and entered into in good faith needs to be followed."

Mother did not testify at the hearing and mother's counsel did not offer to put on any other evidence at the hearing. The court offered mother the opportunity to file her own section 388 petition to raise concerns about the validity of the patch tests; "that is the due process that you're asking for . . . and I believe the burden would be on the parent to establish that the conditions of the test were improper."

DISCUSSION

Mother petitions for relief, claiming she was deprived of due process by the court's decision to set a section 366.26 hearing without first conducting a contested hearing, at which mother could testify and SSA witnesses could potentially be cross-examined. (See Cal. Rules of Court, rule 5.570(h)(2).)

"California's dependency system comports with [due process] because, by the time parental rights are terminated at a section 366.26 hearing, the juvenile court *must* have made prior findings that the parent was unfit. [Citation.] . . . [Citation.] The linchpin to the constitutionality of the section 366.26 hearing is that prior determinations ensure 'the evidence of detriment is already so clear and convincing that more cannot be required without prejudice to the interests of the adoptable child, with which the state must align itself.'" (*In re Gladys L.* (2006) 141 Cal.App.4th 845, 848.)

The procedural posture of this case is unusual. Mother did not, at any time, challenge in this court any of the juvenile court's substantive findings as to her parental fitness, which collectively supported the initial setting of a section 366.26 hearing. (See *In re Janee J.* (1999) 74 Cal.App.4th 198, 206, 210-214 [failure to appeal dispositional order or subsequent orders waived challenges to applicable findings].) Instead, mother

6

only now challenges the court's decision to reset the section 366.26 hearing pursuant to the terms of the stipulation allowing mother to avoid the termination of her parental rights at the initial section 366.26 hearing. Mother was not entitled to this special deal. But, according to mother, once she was granted the special deal, the court was required to provide adequate process for her to contest a positive drug test.

We agree that mother was entitled to due process but disagree that she was not provided with due process under the specific circumstances of this case. "The essence of due process is fairness in the procedure employed; a meaningful hearing, one including the right to confront and cross-examine witnesses, is an essential aspect of that procedure. [Citation.] But due process is also a flexible concept, whose application depends on the circumstances and the balancing of various factors." (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 757.)

The parties' stipulation did not somehow restart the dependency cases, such that the court was obligated to give mother all of the statutory rights she would have had at the onset of a dependency case. Instead, mother was provided an extraordinary opportunity to undo those earlier findings and reunify with her children. In receiving this opportunity, mother implicitly acknowledged the legitimacy of drug testing and agreed to be judged solely by her drug testing results. Mother's failed drug tests suggest she failed to take advantage of her opportunity, and the court was entitled to reset the section 366.26 hearing without a full review hearing in which the totality of the circumstances would be considered. Pursuant to the stipulation, the only pertinent issue was whether mother had failed a drug test since March 3, 2015. Case law cited by mother for the proposition that courts may not deny parents contested review hearings are inapt, because these cases pertain to standard reunification period review hearings. (See, e.g., *David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 775, 778-780; *In re James Q.* (2000) 81 Cal.App.4th 255, 258-259, 265-268.)

Of course, no test is free from the possibility of error.  The court acknowledged this possibility, and offered adequate process appropriate to the circumstances of this case by informing mother of her right to challenge the results of the drug patch testing.  There could have been (and perhaps still could be) a contested hearing on the validity of mother's positive drug test results.  Mother could have filed (and presumably still can file, up to August 5, 2015, the date of the § 366.26 hearing) a section 388 petition with evidence undermining the validity of the positive drug tests she suffered.  Mother was (and still is) free to request a contested hearing to present evidence that the drug patch results were unreliable, either as a general matter or with regard to her particular results.  Mother could cross-examine individuals involved in the testing of mother's drug patches.  Mother could call expert witnesses to testify regarding the reliability of the drug patch.  But mother did not ask to cross-examine SSA witnesses or to present any expert evidence attacking the drug tests; she asked for the opportunity to deny under oath that she ingested methamphetamine.

We disagree with the contention that the court was required as a matter of due process to listen to mother's testimony.  The court made clear that mother's testimony denying her use of drugs would not be sufficient to call into question the positive drug patch results.  The premise of drug testing is that the recipient of the test cannot be trusted to report instances of drug use.  This premise is particularly applicable here, based on evidence in the record suggesting mother had lied in the past about her drug use.  This is not a case in which there is a credibility dispute between competing declarants.  (See, e.g., *In re Clifton V.* (2001) 93 Cal.App.4th 1400, 1401 ["court erred in refusing to hear live witness testimony at the hearing . . . where the declaration testimony was in conflict and the declarants' credibility was at issue," fn. omitted].)  The validity of the test results is the pertinent issue.  Mother's credibility is in some sense beside the point.

Regardless, any arguable error in declining to hear mother's live testimony (as opposed to evaluating and rejecting the relevance and value of the offer of proof without hearing the actual testimony) was harmless beyond a reasonable doubt. (*In re Clifton V.*, *supra*, 93 Cal.App.4th at p. 1406; see *Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1387 ["remand for a contested hearing would constitute an idle act and the juvenile court's error must be seen as harmless beyond a reasonable doubt"].) The court stated it could only be swayed by evidence directly attacking the drug patch test itself, not mother's self-serving statements about her conduct.

DISPOSITION

The petition for writ of mandate is denied.

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.

9