Filed 5/23/23 In re A.L. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | B322684 (Los Angeles County Super. Ct. No. 18CCJP01348) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>D.A.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hernan D. Vera, Judge. Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

In these dependency proceedings D.A. (mother), appeals from a juvenile court's order terminating jurisdiction concerning A.L., her daughter, contending the court erred in denying her an evidentiary hearing, terminating jurisdiction, and fashioning the visitation order. We affirm.

## BACKGROUND

The family consists of mother, D.L. (father, who is not party to this appeal), and the now five-year-old A.L.

A.L. was born in June 2017 at 25 weeks gestation and resided with mother until February 2018, when mother was arrested for domestic violence against father. A.L. was detained and placed with father, who hitherto had had no contact with the child.

Mother had a history of severe mental health problems, and she and A.L. were the subject of prior dependency proceedings. (*In re A.L.* (Oct. 31, 2019, B296028) [nonpub. opn.]; *In re A.L.* (Mar. 24, 2023, B320645) [nonpub. opn.].)

At around 10:00 p.m. on March 8, 2022, mother was seen pacing up and down the street with A.L. in a stroller, then left A.L. and went into the middle of the street to lie down. A.L. got out of the stroller by herself and stood looking at her mother. When a sheriff's deputy arrived, mother was again pushing the child in a stroller, and told the deputy to get away from her. The deputy tried to talk to mother but she cursed, was aggressive, and refused to listen.

Mother was assessed and placed on a Health and Safety Code section 5150 hold.

A.L. reported that she was afraid of mother because she was "bad," made her "go to the bathroom" in a diaper, and pushed, scratched and hit her on her butt and face, and once hit her in the eye. Regarding the incident of March 8, 2022, A.L. stated, ' "[S]he was almost going to get ran over by the cars that were passing. She was laying in the middle of the street and at first, she was saying some things that I did not understand and then she was not saying anything. I was in the stroller on the sidewalk. I was scared and cold, I did not know what she was doing or why. Then she stood up like this [A.L. was sitting on a couch and got up quickly]. No cars hit her. Then the police came.' "

A.L. reported she did not like to call mother " 'mom,' " but would refer to her only by her first name. She stated, " '[Mother] does not like me and I don't think that she loves me either. I like being . . . with my dad, I know he loves me, he never hits me.' "

At an interview in March 2022, mother was cooperative and at first presented appropriately. However, towards the end of the interview she kept getting up from her chair, tapping her chest, indicating she was feeling hot, and pacing and making punching motions.

Maternal relatives reported Mother had a history of mental health issues and should not be left alone with A.L. The maternal grandmother reported mother had emotionally traumatized the child, would not allow her to speak to anyone or play outside, and made her wear a diaper while she was in mother's care. The maternal grandmother reported mother was "mentally destroying" the child. She stated she did not know

3

father, but reported the child loved father and spoke highly of him.

Father reported that he kept his telephone on at all times because he did not know when the next incident with mother would occur, and he would be called to pick up A.L. He was concerned that mother exposed the child to danger but he did not know how to help because in prior dependency proceedings he was granted only 50/50 custody. He said, " 'It is a double edged sword. If I tried taking her from [mother], I would be violating orders that your department put and I would probably be accused of kidnapping or something. If I do obey the orders, as I have been, then I am failing to protect my child, so help me understand this. How about we do not make the same mistake again. Help me help my daughter not be put in a dangerous situation, for her to be out of harm[']s way. She has always been safe with me. If we all know this about the mother, why does she keep getting chances. She can check all the boxes, complete services, but she cannot grasp what she is learning. There has never been a problem with [A.L.] here in my care, but here we are, two years later, because of [mother's] issues and enough is enough.' "

Father's wife and a maternal aunt both reported having seen scratches on A.L.'s face.

Mother denied having any mental health issues, refused to release her medical records, denied any erratic behavior, and declined services from DCFS.

A social worker from mother's prior dependency proceedings reported that mother's mental health was unstable, and although she completed all her programs, mother did not

4

grasp the information and did not apply what she learned into everyday life.

The Los Angeles County Department of Children and Family Services (DCFS or the department) detained A.L. from mother and released her to father, who later filed for a temporary restraining order to protect him from mother. A.L. reported that she did not want to ever go back to mother's home.

## A. Prior Appeal

On May 9, 2022, the juvenile court found A.L. was described by Welfare and Institutions Code section 300, subdivisions (a) and (b), removed the child from mother's custody, and ordered mother to participate in services.[1] Mother appealed the orders, which we affirmed.

## B. Current Appeal

On August 8, 2022, the juvenile court held a progress hearing, in which both mother and father participated.

Counsel for DCFS represented that all issues giving rise to the department's intervention had been resolved, and recommended that the court terminate jurisdiction with a family law order that included monitored therapeutic visitation. A.L.'s counsel concurred and stated that his office had visited the child and found no safety issues in her placement with father, where therapy was ongoing.

Father's counsel joined the others and represented that A.L. did not want to attend visits with mother, and father was not going to force her. Father's counsel agreed that any visits should occur in a monitored therapeutic setting.

---

[1] Undesignated statutory references will be to the Welfare and Institutions Code.

Mother's counsel objected that the case was on calendar only for a progress report, not a section 364 status review hearing where jurisdiction could be terminated.

Counsel stated that mother had a right to contest termination despite a prior indication by the court in an off-the-record conference that she would not be permitted to testify or present evidence. Counsel indicated that mother wished "to explain to the court what has been going on and why." Counsel represented that his "communications with [mother] and what [he had] learned from her and her communications with [DCFS] [were] very different," which "should at the very least be incredibly concerning to the court in regards to why [DCFS] [was] so eager to close this case." Mother's counsel asked that the court continue the matter for a status review/termination hearing so mother could present evidence pertaining to termination and terms of any custody order. Finally, mother's attorney asked that DCFS provide her with its delivered service logs.

The court found that A.L. was "safe with father and that [dependency] conditions no longer exist." It therefore terminated jurisdiction with an order granting father sole legal and physical custody of A.L. and ordering monitored visits for mother in a therapeutic setting. However, the court stayed the order pending receipt of a stipulated custody order. The court stated that this further evidence would not be "for the purposes of relitigating whether the case should close" but only "to provide evidence in support of any differences" in the written closing order to be submitted.

The court stated: "[C]ounsel are to meet and confer on that [order], and if there is a disagreement, then counsel are to file competing [orders]. And I'm going to give mother's counsel an

6

opportunity to present any other . . . evidence in support of any differences in the [order]."

The court informed mother that any visits would be in a therapeutic setting, but it could not "supervise a case for months and—or even years to make sure that the parents can both be in a position to resolve their issues" such that visitation actually occurs.

Mother appeals from the August 8, 2022 findings and orders, including the orders terminating jurisdiction with a custody order, granting father sole legal and physical custody, and ordering monitored visits in a therapeutic setting.

C.     **Post-Appeal Record**

After mother filed her notice of appeal, the parents submitted competing custody orders. The proposed orders both provided for father to have physical and legal custody of A.L., with supervised visits for mother in a therapeutic setting until the child's therapist recommended that visits be liberalized to occur in a monitored, neutral setting. Both proposed orders provided for a neutral monitor and stated that visits would be facilitated by a third party who would provide transportation.

Both proposed orders included a JV-206 "Reasons For No Or Supervised Visitation" form stating no or supervised visitation could occur if a parent failed to make substantial progress in parenting classes and individual counseling. Both stated: "Mother to have 730 evaluation; take all prescribed medications."

Mother's proposed order included two additional provisions: (1) "Mother's monitored visits in a therapeutic setting to commence within a month of this order"; and (2) "Mother's visits to occur during the minor's regular therapy appointments with minor's primary therapist."

7

On August 17, 2022, the juvenile court signed and filed father's proposed custody order, lifted the stay, and terminated jurisdiction. No parties were present when it did so, and the hearing was not reported.

## DISCUSSION

**A.    Deprivation of a Contested Hearing**

Mother contends the juvenile court violated her due process right to present evidence by denying her request for a contested evidentiary hearing. We disagree.

A parent has due process rights in dependency proceedings. (See *David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 777.)

"[D]ue process 'is a flexible concept which depends upon the circumstances and a balancing of various factors.' [Citations.] Even where due process rights are triggered, it must always be determined 'what process is due.' [Citation.] 'We look to the private interest that will be affected by the agency's action, the risk of an erroneous deprivation of that interest, the interest in informing parents of the basis for and consequences of the action and in enabling them to present their side of the story, and the agency's interest in expeditious decisionmaking as affected by the burden caused by an additional procedural requirement.' [Citation.] Accordingly, our courts have recognized that '[d]ifferent levels of due process protection apply at different stages of dependency proceedings.' " (*In re A.B.* (2014) 230 Cal.App.4th 1420, 1436.)

A parent may offer evidence on whether continued supervision is necessary. (§ 364, subd. (c).) The court may condition the parent's right to a contested hearing on this evidence on a sufficient offer of proof. (*In re T.S.* (2020) 52 Cal.App.5th 503, 517.)

8

We review dependency proceedings for harmless error. (*In re James F.* (2008) 42 Cal.4th 901, 918-919.)

Here, the court terminated jurisdiction and made its custody order at the August 8, 2022 hearing. The only opportunity the court afforded mother to submit evidence related to disagreements over how to memorialize the order the court made at the hearing; indeed, in permitting mother to provide further evidence the court made clear it was "not for the purposes of relitigating whether the case should close" but only "to provide evidence in support of any differences" in the written closing order. As the court already made its order and said it wasn't going to reconsider it, we don't believe this opportunity to present evidence preserved mother's due process rights.

However, a court may require a proffer before deciding whether to hold an evidentiary hearing under subdivision (c) of section 364. (E.g., *In re T.S., supra*, 52 Cal.App.5th at pp. 516-517; *In re A.B., supra*, 230 Cal.App.4th at p. 1439 [court is "not require[d] . . . as a matter of due process to hold an evidentiary hearing without regard to an offer of proof"].)

Here, the court apparently held a conference off the record where mother's counsel proffered proposed testimony, and the court indicated whatever was proffered was not sufficient to require an evidentiary hearing. On the record, mother's counsel said only that the evidence would go to mother's communications with DCFS and why DCFS was eager to close the case. In our view, the juvenile court could reasonably reject this proposed evidence as irrelevant to whether continued jurisdiction over the minor was necessary, and to what the custody order should be. Because the proffer did not justify an evidentiary hearing, the court did not err in failing to hold one.

9

## B.    Termination of Jurisdiction

Mother contends the court abused its discretion when it terminated jurisdiction because continued supervision was necessary to facilitate therapeutic visits.  We disagree.

"After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary.  The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."  (§ 364, subd. (c).)  The party seeking continued jurisdiction bears the burden of proof to establish that continuing jurisdiction is necessary.  (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1146, 1163.)  Absent a contrary showing, the default result is termination of dependency jurisdiction.  (*Id*. at p. 1156.)

We review a juvenile court's decision to terminate jurisdiction and to issue an accompanying exit order for an abuse of discretion.  (*In re C.W.* (2019) 33 Cal.App.5th 835, 863.)

Here, the uncontroverted evidence showed that father was meeting all of A.L.'s needs and she was safe in his care.  This evidence justified terminating jurisdiction.

Although mother's counsel argued at the August 8, 2022 progress hearing that mother wished "to explain to the court what has been going on and why," and intimated that DCFS was too "eager to close this case," mother offered no explanation why jurisdiction should not be terminated and no evidence suggesting continued supervision was necessary.

10

Mother argues for the first time on appeal that DCFS needed additional time to begin and oversee therapeutic visits between mother and A.L. because no visits had occurred since the March 2022 detention, and father allowed the child to determine whether she would visit with mother. But mother failed to make this argument below, much less provide any evidence supporting the proposition that father would refuse to comply with the exit order.

## C.  Visitation Order

Mother contends the exit order was an abuse of discretion because it incorrectly reported she had not made substantial progress in a parenting class and individual counseling, incorrectly referenced a section 730 evaluation, and reduced the frequency and duration of visits. We disagree.

When the juvenile court terminates jurisdiction, it may issue an order for custody and visitation. (§ 362.4; *In re Chantal S.* (1996) 13 Cal.4th 196, 202-203.) "The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion." (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) "We review an order setting visitation terms for abuse of discretion. [Citations.] We will not disturb the order unless the trial court made an arbitrary, capricious, or patently absurd determination." (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.)

Here, every provision of the exit order to which mother now objects was contained in the proposed order she submitted to the court. She thus acquiesced to the provisions and cannot now complain about them. (See *In re S.B.* (2004) 32 Cal.4th 1287,

11

1293; *In re Richard K.* (1994) 25 Cal.App.4th 580, 590 ["He who consents to an act is not wronged by it"].)

**DISPOSITION**

The juvenile court's order is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

WEINGART, J.