Filed 6/13/24  J.P. v. Superior Court CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| J.P.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Respondent,<br><br>ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Real Party in Interest. | A170189<br><br>(Alameda County Super. Ct. No. JD-037061-01) |

After petitioner J.P. (mother) left then 18-month-old S.P. alone in her vehicle with controlled substances in January of 2024, she was arrested for child endangerment and the Alameda County Social Services Agency (agency) filed a dependency petition with respect to S.P.  Mother arrived late to the jurisdictional and dispositional hearing held in March, and the juvenile court refused her request to testify, bypassed her for reunification services after finding that she had not made a reasonable effort to treat the problems that had previously led to the removal of three of S.P.'s half-siblings, and set a hearing under Welfare and Institutions Code section 366.26.  Mother seeks an extraordinary writ under California Rules of Court, rule 8.452, arguing

1

that the juvenile court's refusal to let her testify violated her right to due process. We agree and grant the petition.

## BACKGROUND

On January 9, 2024, the agency filed a dependency petition with respect to S.P., then 18 months old, pursuant to Welfare and Institutions Code[1] section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), and (j) (abuse of a sibling). The petition alleged that S.P. was at serious risk of physical harm based on an incident in which mother left S.P. unattended in her vehicle within reach of controlled substances. When she returned, S.P. appeared to be going in and out of consciousness, and mother administered Narcan. S.P. subsequently tested positive for amphetamines, cocaine, and fentanyl, and mother was arrested for child endangerment (Pen. Code, § 273a). The petition also alleged that Mother had failed to protect S.P. based on the same incident, and that she was unable to provide care for S.P. due to her dependency on controlled substances and lack of stable housing, describing an incident in December 2023 in which Mother was unable to refrigerate S.P.'s medication for an ear infection and a March 2023 referral in which law enforcement found S.P. laying down on a bed close to drug paraphernalia.

The petition also alleged, pursuant to section 300, subdivision (j), that S.P. was at risk of harm due to previous dependencies with respect to three of her maternal half-siblings that had ended in the termination of mother's parental rights: (1) D.W., born in 2009, who was placed in a sink of scalding hot water resulting in second and third degree burns and with whom mother ultimately failed to reunify; (2) J.P., born in 2019, who tested positive for

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

amphetamines at her birth with mother subsequently bypassed for reunification services; and (3) B.P., born in 2020, who likewise tested positive for amphetamines at birth with mother subsequently bypassed for reunification services.

An initial detention hearing was held on January 10. Mother was incarcerated at the Santa Rita jail on the child endangerment charge and was not present. The juvenile court temporarily detained S.P. and set an initial jurisdiction and disposition hearing for February 1.

In advance of the February 1 hearing, the agency prepared a jurisdiction and disposition report. The report recommended that the allegations of the petition be found true and that mother be bypassed for reunification services pursuant to section 361.5, subdivisions (b)(10) and (b)(11), which provide that the court shall not order reunification services where such services were terminated for a sibling or half-sibling and "according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian." (§ 361.5, subds. (b)(10), (b)(11), & (c)(2).)

At the February 1 hearing, mother was not present, and the matter was continued until February 22. On February 22, mother was again not present, and the hearing was continued until March 21 at the request of mother's counsel.

The March 21 hearing was scheduled to begin at 2:00 p.m. Mother's counsel stated her appearance and indicated that mother was not present. After counsel for the county and S.P. indicated that they would submit on the agency's report, mother's counsel indicated that mother objected to the report's recommendation, and that she "would like to make a short argument

3

based on the report." Mother's counsel made a brief argument that mother had been making efforts to find an inpatient substance abuse treatment program, and had in fact entered such a program for several months. Mother's counsel also told the court: "I wish she was here today, your Honor, to offer more testimony in this regard. I have been able to contact her. Every phone call that I make, I'm able to speak to [mother]. And I know that she would like to have reunification services." After mother's counsel finished and just as counsel for the county was beginning rebuttal, a brief discussion was held off the record and the court indicated that "Mom has joined us." Mother apologized for being late and the hearing resumed. After county counsel finished his argument and S.P.'s counsel submitted, the following colloquy took place:

"THE COURT: Anything else on behalf of the mother?

"MS. COSTA [mother's counsel]: Your Honor, I would ask that since [mother] is here, may I call her to testify?

"THE COURT: We just argued.

"MS. COSTA: Okay. I just wanted to ask your Honor if I can.

"THE COURT: Just so we're clear, for the record, I asked [if there was] any evidence. Entered the reports into evidence. And then everyone argued. So it's a little difficult for me, after we just closed evidence, to allow you to call the mother to the stand. If that's something you want to do, it is not going to happen now. Because I have another case that I'm in the middle of.

"But the honest truth is the bypass provisions are pretty straightforward. . . . So 361.5(b)(10) reads as follows: Reunification services need not be provided to a parent or guardian described in the subdivision when the Court finds by clear and convincing evidence that the Court order[ed] termination of reunification services for any sibling or half-sibling

4

of the child because the parent failed to reunify with that sibling or half-sibling after the sibling or half-sibling had been removed from the parent pursuant to [section] 361 and the parent is the same parent or guardian described in subdivision (a) and, according to the findings of the Court, this parent has not subsequently made reasonable effort to treat the problems that led to removal of the sibling or half-sibling.

"And [subdivision] (b)(11) [of section 361] clearly is just as it relates to the parental rights of a parent were terminated as it relates to a sibling or half-sibling.

"So I guess the only argument to be made really is that the mother somehow—although I don't see it in the report honestly—that she somehow did make a reasonable effort to treat the problems that led to the removal of the other children.

"So make your argument."

Mother's counsel then made an argument that mother "did make reasonable efforts to treat the problems that led to the removal," and again requested that mother be allowed to testify as to her efforts to obtain treatment for her substance abuse issues. The court interrupted:

"THE COURT: You're arguing. So from my perspective, let's just make the record that Mom didn't get here until after 2:25 and walked in when we're in the middle of argument. County Counsel didn't put on witnesses based upon your representation that that's what you were going to do, is argue the case. Minor's counsel followed your lead as well.

"So now here we are. We've closed evidence. And we are arguing a case and you're asking to reopen it. That's basically what the request is. I'm not really sure what the basis is for the reopen. But the honest truth is you can make the argument, but I need to ask from County Counsel and the

5

Agency, as well as Minor's counsel, their position regarding reopening. Because that is the bigger concern to me."

Counsel for the county objected to mother testifying and S.P.'s counsel stated "this is a tough situation. I would have to submit it to you." The court again noted that the case was set for 2:00 p.m. and mother had arrived at 2:25, and that "[i]t is a little concerning to me that after having almost completed closing arguments that we want to reopen a case," and then asked for a "more specific offer of proof" as to what mother's testimony would be. Mother's counsel again stated that mother "did attempt to find another program but did not have medical coverage. She will be able to provide all of her attempts to seek medical coverage, to try to get into a program, and to obtain mental health services, your Honor." After brief further argument as to whether mother had made reasonable efforts to address her substance abuse issues, the court indicated that "I'm not inclined to reopen honestly," and "I don't hear anything in your offer of proof that would get us to a point where I think Mother gets over the hurdle." The court concluded:

"What I read in the report and even your offers of proof do not indicate that the mother made some reasonable effort to try to ameliorate the issues around substance abuse. So I honestly don't see a reason to reopen. I have heard nothing in the offer of proof that would lead me to believe that the mother has done much of anything as it relates to the substance abuse issues.

"And it is unfortunate that—it's just unfortunate that Mom hasn't gotten any traction for the substance abuse treatment. Because we kind of keep finding ourselves back in the same place."

The juvenile court then indicated it would follow the recommendations in the report, bypassed reunification services for mother pursuant to

6

section 361.5, subdivisions (b)(10) and (b)(11), and set a section 366.26 hearing for July 11, 2024.

On March 25, mother filed notice of her intent to file the instant writ petition. (Cal. Rules of Court, rule. 8.450.)

**DISCUSSION**

Mother contends she was denied due process by the juvenile court's sustaining the jurisdictional allegations and bypassing her for reunification services without allowing her to testify. We agree.

"Parents have a fundamental liberty interest in the care, custody, and management of their children. [Citation.] The state and federal Constitutions guarantee no state shall deprive parents of this interest in their children without due process of law . . . ." (*David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 777.) The right to due process includes the right to present oral testimony. (See *In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1130 (*Vanessa M.*); *In re Clifton V.* (2001) 93 Cal.App.4th 1400, 1405; Cal. Rules of Court, rule 5.534(g)(1)(D) [juvenile court must advise parent of "right to present evidence to the court"].) Notwithstanding a court's power to control its calendar, decisions have long held that a parent's failure to appear at a scheduled hearing does not justify depriving the parent of his or her due process rights. (*In re Dolly D.* (1995) 41 Cal.App.4th 440, 446.)

As mother argues, this case is controlled by the decision of our colleagues in Division Five in *Vanessa M.*, *supra*, 138 Cal.App.4th 1121. There, the minor's father was alleged to have sexually abused her on the basis of reports from other family members. (*Id.* at pp. 1124–1125.) During the course of an extended jurisdictional and dispositional hearing, which took place over several court sessions, the father was occasionally late and even failed to appear at all. Eventually, after the father was more than two hours

7

late for a hearing, the juvenile court granted the agency's request that he be precluded from testifying due to his absence, and the court granted the request, subject to an explanation by father.  (*Id.* at p. 1127.)  Father later arrived and explained that he "woke up late." (*Ibid.*)  At the next hearing, although father was "on time and prepared to resume his testimony," the court stated that he had not provided proof of good cause why he appeared late at the previous hearing, precluded him from testifying, and found true certain jurisdictional allegations.  (*Id.* at pp. 1125–1128.)

In considering the validity of the juvenile court's decision to preclude father from testifying, the *Vanessa M.* court noted "[i]mpairment of the fundamental right to parent must comport with the requirements of procedural due process." (*Vanessa M.*, *supra*, 138 Cal.App.4th at p. 1129.)  In the context of a jurisdictional and dispositional hearing, parents have the due process rights "to present oral testimony as well as to confront and cross-examine the witnesses against them." (*Id.* at p. 1130.)  While recognizing that "[f]ather is certainly not the most attractive standard bearer for the right to be heard" as a result of his inconsistent record of attendance, *Vanessa M.* held the juvenile court could not deprive the father of his procedural due process rights "simply because [he] failed to appear." (*Ibid.*)  *Vanessa M.* found that the juvenile court's preclusion of father's testimony amounted to an evidentiary sanction not authorized by any statute or rule of court, nor could it be justified as a sanction for contempt, and concluded that it was a violation of due process.  (*Id.* at pp. 1131–1132.)

At the same time, the *Vanessa M.* court explained the court is not "powerless to deal with failures to appear.  When a parent is absent without good cause at a properly noticed hearing, the court is entitled to proceed in the parent's absence.  [Citation.]  A parent's failure to appear will not

8

normally constitute the good cause necessary to justify a continuance [citation], because substantial importance is attached to 'the child's need for a prompt resolution of the matter' [citation]. An unjustified failure to appear at a duly noticed hearing reflects a parent's choice not to attend. [Citation.] A court may properly treat this choice as a waiver of the right to be present *at that hearing* and of the benefits of being present." (*Vanessa M.*, *supra*, 138 Cal.App.4th at pp. 1131–1132.)

The agency contends that this case is distinguishable from *Vanessa M.* because the juvenile court here did not preclude mother from testifying as any kind of sanction, but simply because she arrived at the hearing after the close of the evidence and failed to make an offer of proof sufficient to justify reopening it. We cannot entirely agree with this characterization. Although styled as a denial of a request to reopen the evidence, the court's refusal to hear Mother's testimony constituted, in substance, a sanction for Mother's late appearance at the hearing. (See *In re A.V.* (2021) 73 Cal.App.5th 949, 957–959 [finding violation of due process in juvenile court's denial of motion to set aside jurisdictional findings made at hearing from which mother was absent with good cause].) Certainly the juvenile court was entitled to begin the hearing and to proceed in mother's absence, and to treat her absence as a waiver of the benefits of being present until she appeared. (*Vanessa M.*, *supra*, 138 Cal.App.4th at pp. 1131–1132.) But we must balance mother's desire to retain custody of S.P. and to counter the allegations of the petition against the government's goal of serving the child's best interests by resolving dependency matters expeditiously and allowing the juvenile court wide latitude to control dependency proceedings. (*Vanessa M.*, *supra*, 138 Cal.App.4th at pp. 1129–1130; *In re A.V.*, *supra*, 73 Cal.App.5th at p. 957.) We note that all that transpired of substance at the hearing in

9

mother's absence was her counsel making a "short argument based on the report"—an argument during which she indicated that she "wish[ed] [mother] was here today, your Honor, to offer more testimony in this regard" and which spanned less than two pages of the reporter's transcript. Almost immediately after she finished, mother joined the hearing, at the bottom of the third page of the reporter's transcript—a transcript that then continues for 18 more pages. With all due deference to the juvenile court's "wide latitude" to control the proceedings, after considering the totality of the circumstances, we cannot agree that the juvenile court's repeated concern "that after having almost completed closing arguments that we want to reopen a case," or its more troubling statement that if mother wished to testify, "it is not going to happen now . . . [b]ecause I have another case that I'm in the middle of," can outweigh mother's due process right to testify in order to counter the allegations of the petition and in support of seeking reunification services with her daughter.

Nor do we find the error harmless. *Vanessa M.* applied the "harmless beyond a reasonable doubt" standard of *Chapman v. California* (1967) 386 U.S. 18, to conclude the juvenile court's evidentiary sanction required reversal of the jurisdictional findings, holding that "had it not been for the violation of Father's due process right to be heard, there was a reasonable possibility that his testimony would have undermined support for the court's findings." (*Vanessa M.*, *supra*, 138 Cal.App.4th at p. 1133.) Principally at issue in this case was whether mother had "made a reasonable effort to treat the problems that led to removal of" S.P.'s three half-siblings in 2011 and 2021. "The reasonable effort requirement focuses on the extent of a parent's efforts, not whether he or she has attained 'a certain level of progress.' [Citation.] . . . [¶] It is certainly appropriate for the juvenile court to consider

10

the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.)

According to maternal grandmother's statements in the report, mother put herself into a substance abuse treatment program "for 3-4 months in or around August or September 2022 until December 2022 or January 2023," but left the program when another patient's baby died in the program. The maternal grandmother "shared that she then tried to help [mother] find another program, but they were not able to do so." The maternal grandmother also stated that the court in mother's criminal case for child endangerment was "trying to arrange for [mother] to get into an inpatient substance use treatment program and get her transported directly from the jail to the program." According to mother's counsel, her testimony would "be able to provide more information as to her actual steps that she has taken since [S.P.] was born to try and get help for substance use and for mental health," including that "one of the barriers has been having medical coverage," and that she "has been spending a great deal of time at the MediCal office, trying to get MediCal coverage so she can get mental health treatment." Given the focus of the reasonable effort inquiry on the parent's efforts and the duration, extent, context, quality, and quantity of those efforts, we conclude, as in *Vanessa M.*, that there was a reasonable probability that mother's testimony would have undermined support for the court's findings that her efforts to address her substance abuse and mental health issues were not reasonable. Accordingly, the juvenile court's order must be reversed.

11

## DISPOSITION

The petition for extraordinary writ is granted.  Let a peremptory writ of mandate issue directing the superior court to vacate its March 21, 2024 order finding true the jurisdictional allegations against mother, bypassing mother for reunification services pursuant to section 361.5, subdivisions (b)(10 and (b)(11), and setting a 366.26 hearing for July 11, 2024.  The matter is remanded to the juvenile court for it to conduct a new jurisdictional and dispositional hearing, consistent with due process and the dependency statutes.  Our decision is final as to this court immediately.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)

_____

Richman, J.

We concur:

_____

Stewart, P. J.

_____

Miller, J.

_J.P. v. The Superior Court of Alameda County_ (A170189)